[No. 6732-0-I. Division One. January 14, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN LEE BARRY, *Appellant.*

752

*Clark Cavin,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Mark P. Worcester, Deputy,* for respondent.

RINGOLD, J.—On April 27, 1978, a jury found Steven Barry guilty of first–degree robbery while armed with a firearm. The trial court subsequently denied the defendant's motions for arrest of judgment and for a new trial, entered a judgment and sentence of a maximum 20 years imprisonment with the minimum term to be fixed by the Board of Prison Terms and Paroles, and revoked the probation which previously had been granted to the defendant in another case. The defendant appeals.

On February 5, 1978, a man entered the Peebles Drugstore located on the corner of North 145th St. and

Greenwood Avenue North in Seattle, Washington. He confronted the pharmacist, Mr. Richard Culpepper, displayed a revolver and demanded drugs. Mr. Culpepper handed the robber a variety of narcotics, and the robber fled. The robbery, which began at approximately 11:20 a.m., lasted about 5 minutes.

Approximately 11:30 a.m. that same day, a Mr. Diemert observed a man run out of the drugstore with a pistol in his hand and get into a Pinto automobile, which then sped away. Mr. Diemert attempted to follow the vehicle and observed the driver as he turned his head and looked back over his shoulder. Mr. Diemert later identified Richard McKim as the driver of the vehicle. He never observed the passenger.

McKim and the defendant were subsequently tried jointly for the robbery. Mr. Culpepper, who had been a victim of previous robberies, testified at trial that he and the robber were 2 or 3 feet apart, that there was excellent lighting in the area, and that he made a special effort to observe and remember the appearance of the robber. Mr. Culpepper observed that the robber was 25 to 30 years of age, of medium build, about 5 feet 9 inches tall, white, male, had dark brown hair of approximately shoulder length, wore a mustache and had one or two days' growth of facial hair. He identified Barry as the robber in a lineup, at trial, and from a picture in a montage.

Mr. Culpepper testified on cross–examination that if he were convinced that the defendant's hair was an inch to a half inch above the collar and that he was clean shaven on the day of the robbery, then he would conclude that Barry was not the robber. The defendant proceeded to introduce the testimony of Janice Newman, a professional haircutter and the defendant's girlfriend, that she had cut the defendant's hair on the day before the robbery to about collar length in back. Two coemployees of Ms. Newman also testified that they had seen the defendant while he was getting his hair cut. A rebuttal witness for the State testi-

fied to having seen on the morning of the robbery the defendant with hair 3 or 4 inches below the collar.

In an attempt to show that he could not have been in North Seattle at the time of the robbery, the defendant presented the testimony of two of his ex–girlfriends. One of them testified that the defendant was at her home in West Seattle until about 10:30 a.m., when he left on foot. The other testified that about 11:50 a.m. the defendant arrived by foot at her home, which was two houses away from the other woman's home.

After the State rested its case the defendant moved for a severance of the defendants' trials on the ground that he had discovered the identity of the gunman as a result of a statement made to him by McKim during trial. The severance was argued to be necessary in order that the defendant might use the statement without being subjected to impeachment by both the State and McKim. The motion was denied. Also denied during the trial was the defendant's motion to endorse Elizabeth Loftus as an expert witness on the factors that affect a person's ability to observe and remember events. The trial court additionally denied the defendant's post–trial motion for a new trial on the ground of newly discovered evidence which purportedly would identify the gunman.

We affirm.

The defendant first contends that the trial court erred in denying his motion for severance of defendants pursuant to CrR 4.4(c)(2)(i), which provides that the court shall sever defendants if "appropriate to promote a fair determination of the guilt or innocence of a defendant." He argues that the following facts, which were presented to the trial court, show the necessary prejudice to his case, *State v. Smith*, 74 Wn.2d 744, 446 P.2d 571, *modified*, 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1968), as a result of the trial court's denial of his motion:

1. According to Barry, codefendant McKim admitted to Barry during the course of the trial that Tilton did it.

2. Tilton, if called as a witness, would deny involvement, or would claim his privilege against self–incrimination.

3. McKim was opposed to all evidence relating to Tilton.

4. Another prisoner, Robert Berg, would testify that McKim had told Berg to tell his cellmate Tilberg or Tilton to keep his mouth shut and not to mention McKim.

5. Testimony by Barry would subject him to cross–examination and possible impeachment by McKim.

Neither the State nor the defendant argues that the first, second and fourth items would have been inadmissible at the defendants' joint trial.

■ The granting or denial of a motion for separate trials of jointly charged defendants is entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Gosby,* 11 Wn. App. 844, 849, 526 P.2d 70 (1974), *aff'd on other grounds,* 85 Wn.2d 758, 539 P.2d 680 (1975). Separate trials for defendants are not favored in this state. *State v. Herd,* 14 Wn. App. 959, 963–64 n.2, 546 P.2d 1222 (1976). Therefore, the defendant must be able to point to specific prejudice before the denial of a motion for severance will be overturned. *State v. Kinsey,* 20 Wn. App. 299, 579 P.2d 1347 (1978). No such showing was made to the trial court.

In denying the defendant's motion for severance, the trial court allowed that the defendant could testify if he wished, that Berg could be called to testify, and that Tilton could also be called assuming that there was some testimony to link him with the case. A separate trial would not have offered the defendant materially more than this. It was recognized that the defendant could not call McKim as a witness in the joint trial because of McKim's claim of his right against self–incrimination. *See State v. Smith, supra.* Severance, however, provided little prospect of McKim being available as a witness in Barry's trial, and he admits that the mere opportunity to call McKim in a separate trial is insufficient grounds for the granting of a separate trial.

■ The prospect of the defendant's being cross–examined or impeached through the use of his prior criminal

record by McKim's counsel, together with the possibility of calling McKim in a separate trial, are insufficient to establish the requisite showing of prejudice. The existence of antagonistic defenses is insufficient to make it an abuse of discretion to deny a severance, *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968), and the defendant has cited no authority that he had a right not to be impeached by McKim's counsel. While Mckim was admittedly opposed to the introduction of evidence relating to Tilton, this adds no weight to Barry's claim of prejudice. So, too, the mere possibility of McKim testifying in a separate trial adds scant weight to the defendant's overall claim of prejudice.

The defendant next contends that the trial court's refusal to grant his motion for a new trial based upon newly discovered evidence was an abuse of discretion. The test for evaluating a motion for a new trial based upon newly discovered evidence, CrR 7.6(a)(3), is whether the evidence (1) will probably change the result if a new trial is granted; (2) has been discovered since trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material to the issues and admissible; and (5) is not merely cumulative or impeaching. *State v. Gibson,* 75 Wn.2d 174, 449 P.2d 692 (1969), *cert. denied,* 396 U.S. 1019, 24 L. Ed. 2d 511, 90 S. Ct. 587 (1970); *State v. Letellier,* 16 Wn. App. 695, 558 P.2d 838 (1977). A trial court's denial of a motion for a new trial will not be overturned absent a manifest abuse of discretion, *State v. Franks,* 74 Wn.2d 413, 445 P.2d 200 (1968).

The defendant presented the following documents to the trial court upon his motion for a new trial:

1. Records of a clinic showing that McKim and Tilton were there 2 to 4 hours prior to the robbery.

2. An affidavit of a corrections officer at the King County Jail that he overheard a conversation between Barry and a person from the cell assigned to Tilton, and that the person told Barry that he had participated in the robbery.

3. An affidavit of an inmate of the King County Jail that he was told by Tilton that he was lucky that the police had

not connected him with Barry's robbery case, and that he failed to come forward lest he be charged as a habitual criminal.

4. An affidavit of Barry that Tilton approached him during the trial and asked him how it was going, that McKim told him during the trial that Tilton was the other participant in the robbery, that McKim told him after the trial that he had met Tilton at the clinic on the morning of the robbery, and that Tilton admitted to him after trial that he was with McKim during the robbery.

5. An affidavit of a Mr. Heinz that he knew McKim in 1974 and 1975, and that they frequently went to the home of Tilton to buy drugs from him.

The defendant argues that the five documents satisfy the five–part test set forth in *State v. Gibson, supra,* and that the trial court abused its discretion by weighing the strength of the documents against the strength of the evidence presented at trial, *State v. Ramel,* 65 Wn.2d 326, 396 P.2d 988 (1964), to arrive at its determination whether a new trial would probably change the result of the first trial.

■ In passing upon the question whether newly discovered evidence will probably result in a different outcome upon retrial, the trial court must of necessity pass upon the credibility, significance and cogency of the proffered evidence. *See State v. Peele,* 67 Wn.2d 724, 409 P.2d 663 (1966); *State v. Thorp,* 133 Wash. 61, 65, 233 P. 297 (1925). *Accord, United States v. Steel,* 458 F.2d 1164 (10th Cir. 1972); *United States v. Miller,* 277 F. Supp. 200, 209 (D. Conn. 1967), *rev'd on other grounds,* 411 F.2d 825 (2d Cir. 1969).[1] The trial court may utilize the knowledge that it

---

[1]*State v. Ramel,* 65 Wn.2d 326, 396 P.2d 988 (1964), relied upon by the defendant for his argument that the trial court may not weigh the evidence, is not at odds with this rule. In *Ramel, supra,* the trial court granted a retrial, noting both that newly discovered evidence would establish an alibi for the defendant if believed by the jury and that there would not have been a conviction had the evidence been available to the jury. The holding of *Ramel* that these grounds provided sufficient justification for the trial court's grant of a new trial is consistent with the rule that the trial court must necessarily assess the sufficiency of the new

gained from presiding at the trial, *e.g., United States v. Curry,* 497 F.2d 99 (5th Cir.), *cert. denied,* 419 U. S. 1035, 42 L. Ed. 2d 311, 95 S. Ct. 519 (1974), and may take into account the criminal records of the persons whose affidavits are submitted at the hearing. *Brandon v. United States,* 190 F.2d 175, 178 (9th Cir. 1951). We hold that the trial court did not abuse its discretion, *i.e.,* discretion "exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The trial court ruled that the impact of the newly discovered evidence upon the jury's belief of Mr. Culpepper's testimony would be insufficient to change the result of the first trial. In so ruling the trial court found the affidavits of the correction officer, the inmate, and Barry to be untrustworthy and of a low credibility. Measured against the strength of Mr. Culpepper's testimony, as evidenced by the jury's belief of it over the defendant's alibi evidence, the strength of Barry's newly discovered evidence is not such that we can say the trial court abused its discretion. The correction officer's affidavit is of little cogency because it fails to name the speaker. Given the fact that the overheard conversation included Barry as a participant, reasonable men could differ as to the trustworthiness of the substance of the conversation. The credibility of the inmate's affidavit could properly be discounted or rejected as unworthy of belief by the trial court because of the affidavit's source and the inmate's jail–time acquaintance with Barry. *See United States v. Schoepflin,* 442 F.2d 407 (9th Cir. 1971). Likewise, Barry's affidavit could be deemed untrustworthy. Barry's failure to indicate that McKim and Tilton would be available to testify at a new trial also discounts the cogency of his affidavit. The remaining documents add very little weight to the defendant's position.

---

evidence to determine whether a new trial would probably result in a different outcome.

■ In addition, the defendant's evidence may not properly be called "newly discovered." As stated in *United States v. Soblen,* 203 F. Supp. 542, 565 (S.D.N.Y. 1961) (footnote omitted), *aff'd,* 301 F.2d 236 (2d Cir.), *Cert. denied,* 370 U.S. 944, 8 L. Ed. 2d 810, 82 S. Ct. 1585 (1962),

> Where the allegedly newly discovered evidence was known to the defense or readily obtainable by it before or during the trial and the defense trial strategy was not to utilize such known or obtainable evidence during the trial, the decision by the defense to change its strategy after an unfavorable verdict does not render the evidence "newly discovered."

Defense counsel indicated during the motion to sever that she believed McKim was present at the clinic on the morning of the robbery, but no showing has been made by the defendant that he attempted to ascertain at that time who, if anyone, McKim contacted. The affidavits of the corrections officer, the inmate, and Barry merely restate, though through different sources, much of what was already known to the defendant at the time of his motion to sever defendants. The defendant knew of McKim's statements implicating Tilton but elected not to testify and to call Tilton and Berg as witnesses. What he now proposes to introduce is cumulative to what he might have brought out at his trial. The ascertainable and cumulative nature of the defendant's evidence precludes it from now being characterized as "newly discovered" evidence.

■ The defendant next contends that the trial court abused its discretion by refusing to grant his motion for an order endorsing Elizabeth Loftus as an expert witness on the general subject of the reliability of eyewitnesses. We are in agreement with the ruling of the trial court that the proposed testimony of Ms. Loftus would have been collateral to the specific issue of Mr. Culpepper's ability accurately to observe and recall what he saw, and that its probative value was outweighed by the possibility of prejudicing the State. The proffered testimony bore no specific relation to Mr. Culpepper but concerned eyewitnesses in general. It posed

the risk of interfering with the jury's role as the fact finder, *see United States v. Collins*, 395 F. Supp. 629 (M.D. Pa.), *aff'd*, 523 F.2d 1051 (3d Cir. 1975), regarding Mr. Culpepper's reliability because of the special credence often attached to expert testimony. Although the possibility of misidentification always exists in a given case, exposure of that risk is a specific function of cross–examination and argument by defense counsel. *United States v. Amaral*, 488 F.2d 1148 (9th Cir. 1973); *State v. Johnson*, 12 Wn. App. 40, 44–45, 527 P.2d 1324 (1974). Also, the general testimony of Ms. Loftus raised the possibility of creating a time–consuming side issue as to the testimony's reliability and its applicability to Mr. Culpepper's testimony. It was within the trial court's discretion to determine that this tendency of the proffered evidence to mislead, distract and possibly confuse the issues counterbalanced the testimony's probative value. *State v. Stevenson*, 16 Wn. App. 341, 555 P.2d 1004 (1976). We cannot say that the trial court abused its discretion.

The defendant also contends that the trial court abused its discretion by revoking his probation on the basis of his robbery conviction. He argues that *People v. Grayson*, 58 Ill. 2d 260, 319 N.E.2d 43 (1974), *cert. denied*, 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001 (1975), dictates this result. We disagree.

In *People v. Grayson, supra*, the court held that an acquittal of a criminal charge precludes revocation of probation based on the same evidence that resulted in the acquittal. Each proceeding was presided over by a different judge. *People v. Grayson, supra* at 44. The court reasoned that the issue of criminal misconduct could not be relitigated because of collateral estoppel and double jeopardy even though the burden of proof in each proceeding differed. *People v. Grayson, supra* at 45. This rationale was rejected in *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974). In addition, no relitigation occurred in this case as it did in *People v. Grayson, supra*.

█ The trial court properly revoked the defendant's probation on the basis of its independent determination as the judge presiding over the defendant's case that the defendant was convicted on convincing evidence. Whether the probation proceeding or the criminal trial comes first makes no difference, *State v. Cyganowski,* 21 Wn. App. 119, 584 P.2d 426 (1978), because the judge may revoke probation if he is reasonably satisfied of the defendant's misconduct, be it criminal or a breach of the conditions of probation, *State v. Kuhn,* 81 Wn.2d 648, 650, 503 P.2d 1061 (1972).

█ The defendant argues and the State concedes that his conviction of first–degree robbery while armed with a deadly weapon, RCW 9A.56.200(1)(a), precludes application of the enhanced penalty provision of the firearm statute, RCW 9.41.025, *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978).

We affirm, but remand for resentencing.

JAMES, A.C.J., and ANDERSEN, J., concur.

Reconsideration denied March 6, 1980.