630 P.2d 299
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Mary Tex PAYNE, Defendant-Appellant.**

**No. 4955.**

Court of Appeals of New Mexico.

June 9, 1981.

John B. Bigelow, Chief Public Defender, Melanie S. Kenton, Asst. Appellate Defender, Santa Fe, Janet Clow, Peter Schoenburg, Asst. Public Defenders, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Charles F. Noble, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant, Mary Tex Payne, appeals her conviction of voluntary manslaughter with firearm enhancement. The victim was Betty Lou Telles. We discuss two issues: (1) the presentation to the grand jury, and (2) prosecutor misconduct. We reverse because of prosecutor misconduct.

### Presentation to the Grand Jury

This issue involves the denial of defendant's pretrial motion to dismiss the indictment because of the prosecutor's failure to present exculpatory evidence to the grand jury. The motion was denied after an evidentiary hearing.

(a) The Effect of *Maldonado v. State*, 93 N.M. 670, 604 P.2d 363 (1979)

*State v. Herrera*, 93 N.M. 442, 601 P.2d 75 (Ct.App.1979), held that defendant is denied due process when the prosecutor knowingly withholds exculpatory evidence from the grand jury. *Herrera* also held that exculpatory evidence was evidence which reasonably tends to negate defendant's guilt.

*State v. Herrera* is consistent with § 31–6–11(B), N.M.S.A.1978 (1980 Cumm.Supp.), which states: "The prosecuting attorney assisting the grand jury shall present evidence that directly negates the guilt of the target where he is aware of such evidence."

The Attorney General's position is that *Herrera* and § 31–6–11(B) are not applicable if the only showing is that the prosecutor knowingly withheld exculpatory evidence from the grand jury. The Attorney General seems to assert that in such circumstances no consequences attach to the withholding of exculpatory evidence. The Attorney General relies on *Maldonado v. State* even though *State v. Lampman*, 95 N.M. 279, 620 P.2d 1304 (Ct.App.1980), held that *Maldonado*, supra, did not overrule *Herrera*, supra, and the Supreme Court denied certiorari in *Lampman*, supra, see 95 N.M. 426, 622 P.2d 1046 (1980).

The Attorney General states:

The focus of the due process violation [and presumably a violation of § 31–6–11(B)] is on the effect *at trial*, not on the effect before the grand jury.... [T]he Supreme Court is of the opinion that a fair trial can cure improprieties in grand jury presentations. Any other reading renders the language of *Maldonado* meaningless. (Emphasis in original.)

The language in *Maldonado*, on which the Attorney General relies, is: "In other words, the false or perjured evidence before a grand jury and the withholding of exculpatory evidence, *if used or withheld by the prosecutor at trial*, may result in the denial of a fair trial to the defendant." (Emphasis in original.)

The Attorney General misreads *Maldonado* in several respects.

(1) The issue in *Maldonado* was the alleged presentation of inadmissible evidence to the grand jury. *Maldonado* states:

In the recent case of *State v. Herrera* ... the Court of Appeals reaffirmed that due process requires the presentation of evidence to the grand jury which tends to negate guilt. Further, the newly-enacted grand jury reforms specifically require that the prosecutor present exculpatory evidence to the grand jury. § 31–6–11(B).

Maldonado argues that the facts in his case present a comparable due process violation. He would have us *extend* ... *State v. Herrera* and rule for the first time that the receipt of inadmissible evidence by a grand jury is grounds for invalidating an indictment. *We decline to do so.* (Our emphasis, except for citation.)

\*　　\*　　\*　　\*　　\*　　\*

We hold that the indictment in this case is not void because of the introduction of inadmissible evidence ....

The Supreme Court, in *Maldonado*, supra, declined to extend *Herrera*, supra. *Maldonado* dealt with inadmissible evidence, and held that such evidence, before the grand jury, did not void an indictment. *Maldonado* did not deal with the knowing withholding of exculpatory evidence.

(2) *Maldonado* recognized the newly-enacted grand jury reforms which require that exculpatory evidence be presented to the grand jury. *Maldonado* did not hold that no consequence attaches to a violation of the newly-enacted statute unless additional facts are present.

(3) An indictment is to be dismissed if the prosecutor knowingly withholds exculpatory evidence from the grand jury. *State v. Herrera*; § 31–6–11(B), supra. Even if no claim is made that the indictment should be dismissed because of such a withholding, there still may be a consequence, adverse to the State, for such a withholding. As the Supreme Court stated in *Maldonado*, if exculpatory evidence is knowingly withheld in the presentation to the grand jury, and is either used or withheld by the prosecutor at trial, a denial of due process may result at the trial. This is the meaning of the *Maldonado* language relied on by the Attorney General.

The Attorney General is incorrect in contending that *State v. Herrera* and § 31–6–11(B) did not set forth the standard applicable to the pretrial hearing on defendant's motion to dismiss.

**(b) Exculpatory Evidence Knowingly Withheld**

■ A requirement for dismissal of the indictment is that the exculpatory evidence be *knowingly* withheld. The prosecutor's evidence at the motion hearing raises a question as to the meaning of *knowing*.

The prosecutor who presented the case to the grand jury was not the prosecutor originally assigned to the case, but a substitute; the substitution occurred the day before the presentation. There was a minimum of materials in the district attorney's case file; the prosecutor did not remember whether there were police reports in the file, although exhibits show police reports and a statement obtained from a witness a week prior to the presentation. The prosecutor did not remember when he first read the police reports, whether before or after the grand jury presentation. The prosecutor was vague about which witnesses he talked to prior to the grand jury presentation. The prosecutor did not remember at what point in time he learned of scratches and bruises on defendant's face.

■ The trial court considered the contents of the police reports and the witness's statement in denying defendant's motion; thus, considered that the prosecutor *knew* of the contents. Because of this procedure, a decision as to the meaning of *knowing* is not required in this case. We remind prosecutors of their duty to conduct themselves fairly; that their methods must accord with the fair and impartial administration of justice. See § 31–6–7, N.M.S.A.1978 (1980 Cum.Supp.); *State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct.App.1974). We caution that fair conduct on the part of the prosecutor does not occur if the prosecutor postures his handling of a case to avoid knowing of exculpatory evidence; that "knowing" may need to be construed to mean matters that the prosecutor should have known about. See *State v. Sanders*, 96 N.M. ——, 628 P.2d 1134 (Ct.App.) 1981. Keeping the contents of a case file to a minimum and failing to read police reports and the statements of witnesses prior to a grand jury presentation, suggest that such a ruling may be required in a future case.

(c) The evidence withheld was contained in police reports and the statement of a witness. Defendant claims that this withheld evidence negated defendant's guilt on the grounds of self-defense. We agree with the trial court's characterization of this evidence:

THE COURT: How could these factors have any relevance whatsoever, unless there is somebody there to explain them. In other words, she supposedly told a witness, "Betty beat me up," without saying when, how or under what circumstances. He heard loud noises, which could be consistent with a number of things. I don't know, breaking windows in [sic] a prior occasion can be a prior aggressive act, which would not in any way justify a murder or a killing.

. . . .

THE COURT: How can they even—there would have to be the greatest speculation in the world for them to surmise that is a self defense, because she told somebody else she was beaten up and she had scratches on her face, for that to be a self defense under those circumstances to a Grand Jury.

■ Defendant failed to establish that exculpatory evidence was withheld; under the alleged exculpatory evidence, the trial court properly denied the motion to dismiss the indictment.

*Prosecutor Misconduct*

Defendant introduced evidence of the victim's aggressive and violent character; however, defendant did not put her character in issue. See Evidence Rule 404(a); *State v. Gutierrez*, 93 N.M. 232, 599 P.2d 385 (Ct.App.1979). The prosecutor attempted, in violation of Evidence Rule 404(a)(1), to interject defendant's character into the case. He did so by: (1) Asking a witness on redirect examination whether the witness testified on cross-examination that the *victim* was violent. The witness answered that the *victim* was abrasive and potentially violent. The prosecutor then asked wheth-

er the witness was asked the same question as to the defendant. The trial court told the prosecutor that the witness had not testified to defendant's character. (2) Examining another witness, the prosecutor asked if defendant had ever been aggressive to the witness. The defense objection was sustained. (3) The prosecutor asked defendant if she had put her gun to a certain witness's head. The defense objection was sustained.

■ Defendant contends the above efforts to improperly interject defendant's character into the case is an independent ground for reversal. We need not decide this contention. Certainly, by the time of closing argument, the prosecutor knew that defendant's character was not an issue. We consider the prosecutor's efforts to improperly interject defendant's character in deciding that the prosecutor's closing argument was misconduct requiring reversal.

The defense, in closing argument, stated:
You heard no evidence from anyone saying that Mary Tex Payne picked fights, that Mary Tex Payne beat on Betty Telles. The only evidence that you heard was that Betty Telles beat on Mary Tex Payne. That Mary Tex Payne was the one that had bruises and scratches on her body throughout the relationship with Betty Telles. That Betty Telles was the one to point knives and to pull guns and to act out in a violent manner.

The prosecutor objected, stating:
I'm going to object at this point. Counsel has indicated that we didn't put on any evidence of Mary Tex Payne's previous acts of violence—
Defense counsel (interrupting): Your Honor, may we approach the bench.

At the bench conference, defense counsel referred to evidence on which the defendant's closing argument was based. The above-quoted argument by defense counsel did not go beyond the evidence in the case. The prosecutor's position was that the defense argument opened the door to a prosecution argument. The trial court ruled that the prosecutor could rebut the defendant's

argument. This rebuttal, permitted by the trial court, went to the comment by the defense of "no evidence" that defendant picked fights or beat on the victim. Compare *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). The prosecutor made no effort to refer to evidence in the case. The prosecutor's rebuttal argument was:

Counsel said—and she made a mistake in closing argument—possibly a fatal mistake—she said we haven't tried to hide anything, we've tried to bring things out here, we've tried to bring everything out. Then she said there hasn't been any evidence presented on what Mary Tex Payne is like, what her character is like, but there has on the victim. But, let me tell you something—the rule is that we can't present

. . . .

Defendant's objection was overruled; the prosecutor continued:

We are not allowed to go into the defendant's history and present "on this date she beat somebody up, on this date she beat somebody up, etc.," down the line and say and therefore she acted in conformity therewith. And its obvious why we aren't allowed to do it because people would be convicted on their past and not on their particular acts. So we are not allowed to do that. But they are allowed to do that to the victim and it's called the prosecutor mercy rule. They are allowed to go into the character of the victim and unless they open up the defendant's character by having her take the stand and say something to the effect of "I'm a peaceful person," I can't touch it. So let's just let that issue stand right there, all right?

The essence of the prosecutor's argument was that the prosecution was not allowed to present evidence of the defendant's character, of how the defendant beat someone up, but the defense was allowed to introduce evidence of the victim's character. The impropriety of this argument is patent; it suggested that defendant did beat up people and was of bad character; it, in effect, admitted there was no such evidence, and

suggested that the jury would have heard such evidence, if the prosecution had been "allowed to do it."

 The judge alone instructs the jury as to the law in a given case; where counsel instructs on the law, counsel invades the province of the court. *People v. Boyd*, 88 Ill.App.3d 825, 43 Ill.Dec. 798, 410 N.E.2d 931 (1980); see U.J.I.Crim. 50.00. The prosecutor instructed the jury as to the evidentiary law concerning character evidence and did so in a way to suggest that defendant was of bad character, and the jury would have known about that bad character but for the evidentiary law. Compare *State v. Shedoudy*, 45 N.M. 516, 118 P.2d 280 (1941).

In *People v. Miller*, 43 Cal.App.3d 77, 117 Cal.Rptr. 491 (1974), the trial court refused to instruct on a lesser included offense. The prosecutor argued to the jury that defendant had admitted the lesser offense, but because there would be no lesser offense instruction,

> "[t]he dice have been rolled so to speak and you will find either robbery in the first or second degree . . . or nothing at all. . . . I want at this time . . . to divorce you of any notions you might have that the People can later try this man on the Jamaican switch. This is it. I will not go into the legal rationale why we can't."

The California court held that the prosecutor's argument was highly improper, that the charges for which the defendant could be prosecuted were not a proper subject for the jury's consideration. Similarly, the evidentiary rule as to defendant's character was not a proper subject for the jury's consideration.

The prosecutor proceeded improperly by instructing the jury as to an evidentiary rule. The prosecutor used this improper procedure to suggest the availability of inadmissible evidence. The inadmissible evidence went to defendant's character. Inasmuch as the shooting was admitted, the only pertinence of this argument was to weaken the defense of accident or self-defense. The evidence of guilt was not overwhelming; the harmless error rule is not applicable. We cannot say there was no reasonable probability that the misconduct contributed to the conviction. Because of the misconduct, defendant did not receive a fair trial. *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978).

The judgment and sentence are reversed. Defendant is awarded a new trial.

IT IS SO ORDERED.

HERNANDEZ, C. J., and LOPEZ, J., concur.