653 P.2d 863

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**William Jack STEPHENS and Michael Dennis Colby, Defendants-Appellants.**

**No. 14076.**

Supreme Court of New Mexico.

Oct. 28, 1982.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

David Driscoll, Santa Fe, for defendants-appellants.

## OPINION

FEDERICI, Justice.

This is an appeal from the Santa Fe County District Court's denial of appellants' Michael Colby (Colby) and William Stephens (Stephens) motion for postconviction relief. Both defendants were incarcerated as inmates at the State Penitentiary at Santa Fe, when the alleged crime in this case occurred. Colby and Stephens were convicted of the first-degree baseball bat-beating death of a fellow inmate, Bert Duane Stevens (Stevens). The homicide occurred in the prison weightlifting room on April 15, 1978. This Court affirmed Colby and Stephens' first degree homicide convictions on October 1, 1979. *State v. Stephens,* 93 N.M. 368, 600 P.2d 820 (1979).

On May 2, 1979, another prison inmate, Michael Edward Price (Price), executed an affidavit confessing that he alone, and not Colby and Stephens, killed Stevens. Initially, Price was indicted with Colby and Stephens as co-defendants for the homicide of Stevens. However, one week into the trial of co-defendants Price, Colby and Stephens, Price was severed as a defendant and he was granted a separate trial. Thereafter, on December 20, 1978, Price entered a plea of guilty to a reduced charge of voluntary manslaughter for the death of Stevens. Colby and Stephens made a motion for a new trial on October 28, 1980, pursuant to N.M.R.Crim.P. 45, N.M.S.A.1978 (Repl. Pamp.1980), based upon newly discovered evidence which included alleged exculpatory statements and Price's affidavit.

On November 2, 1981, at the first evidentiary hearing on the Rule 45 motion, former prison correctional officer Jerry Gallegos (Gallegos) testified that he was the officer in charge of checking prisoners as they left the prison recreation yard. The prison weightlifting room is within the confines of the prison recreation yard. He testified that he recalled observing Colby leaving the recreation yard on the day of the homicide before the homicide allegedly occurred. He further testified that he pat-searched Colby at the time he left the recreation yard and that he did not observe any blood spots on Colby's pants. Gallegos further stated that he provided this information to State Prison Warden Levi Romero shortly after the homicide. An attorney representing Colby, Stephens and Price at the homicide trial in 1978, executed an affidavit stating that no discovery material mentioning either the availability of Gallegos or his exculpatory statements were ever revealed to the defense. The defense made a proper motion for disclosure pursuant to N.M.R.Crim.P. 27, N.M.S.A.1978 (Repl.Pamp.1980). On December 9, 1981, the Santa Fe District Court denied Colby and Stephens' motion for a new trial. Colby and Stephens filed a timely notice of appeal to this Court. We affirm.

The defendants assert that the trial court erred in not granting their motion for a new trial based on five grounds:

1. Whether the State failed to disclose the existence of an essential and exculpatory witness.

2. Whether the confession of Michael Price requires the granting of a new trial.

3. Whether the testimony of the State's only eyewitness to the homicide was properly excluded.

4. Whether the State offered executive clemencies, paroles and other rewards to State witnesses in exchange for testimony against the defendants.

5. Whether the cumulative weight of the newly discovered evidence warrants a new trial.

1. *Disclosure of Exculpatory Witness.*

■ The first issue is whether the State failed to disclose the existence of an essential and exculpatory witness to the defense. It is well established that the deliberate suppression by the prosecutor of evidence favorable to and requested by the accused violates due process when the evidence is material either to guilt or punishment. *Montoya v. Metropolitan Court,* 21 N.M.St. B.Bull. 1120, 98 N.M. 616, 651 P.2d 1260 (1982). *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196, the United States Supreme Court held that:

[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

In this case, Gallegos reportedly informed Warden Romero that he had seen Colby leaving the recreation yard on the day of the homicide at a point in time before the homicide occurred. Additionally, Gallegos also said that he did not observe any blood spots on Colby's pants, as he had the opportunity to observe Colby's pants when he pat-searched Colby.

■ At the threshold, we must inquire whether the existence of Gallegos or his statements are "newly discovered" evidence. In *State v. Mabry,* 96 N.M. 317, 322, 630 P.2d 269, 274 (1981), this Court said:

A motion for a new trial is properly denied unless the newly-discovered evidence is such that (1) it will probably change the result if a new trial is grant-ed; (2) it must have been discovered since the trial; (3) it must be such that it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory.

The general rule is that motions for a new trial are not favored and will only be granted upon a showing of a clear abuse by the trial court. *State v. Ramirez,* 79 N.M. 475, 444 P.2d 986 (1968); *State v. Fuentes,* 67 N.M. 31, 351 P.2d 209 (1960).

■ To determine whether the existence of Gallegos or his statements is "newly discovered" we must further inquire whether Gallegos' statements made to the State prison correctional authorities, but never related to the prosecution attorneys, were nonetheless a nondisclosure by the prosecution, deliberate or otherwise, of evidence favorable to the accused. *Brady v. Maryland, supra.* If the nondisclosure of the evidence is both material and prejudicial to the defendant, a new trial is warranted. *Trimble v. State,* 75 N.M. 183, 402 P.2d 162 (1965); *State v. Morris,* 69 N.M. 244, 365 P.2d 668 (1961); *Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). In this case, however, there is simply no evidence that the State prosecution knew and deliberately failed to disclose either the existence of Gallegos or his statements to the defense. At the hearing on Colby and Stephens' motion for a new trial, the following colloquy occurred between the State prosecution and Gallegos:

Q. Mr. Gallegos, did you testify previously at the trial of these [Colby and Stephens] gentlemen?

A. No.

Q. Were you spoken to by any of the defense attorneys?

A. No.

In fact, there is no evidence that the State prosecution was even aware of the nature of Gallegos' statements until the hearing on Colby and Stephens' motion for a new trial. We therefore find that there

was no deliberate nondisclosure by the prosecution of the existence of Gallegos or his statements that would warrant the granting of a new trial. *United States v. Agurs, supra; Brady v. Maryland, supra; Mooney v. Holohan, supra.*

We must next proceed to determine whether the nondisclosure, even if not deliberate, may have been a negligent nondisclosure to the defense. *Chacon v. State, supra.* In *Chacon,* the Court of Appeals reversed the trial court and granted the accused a new trial. The court held that an inadvertent nondisclosure of a supplemental police report and the statement of a witness, which was in the possession of the district attorney, but had been placed in the wrong file, warranted adequate grounds to grant a new trial. Here, there has been no assertion of proof that the State prosecution ever had Gallegos' statement at their disposal, but inadvertently refused to disclose it to the defense. Again, there is *no evidence* in this case that the State prosecution had knowledge of Gallegos' statement. *Cf. State v. Payne,* 96 N.M. 347, 630 P.2d 299 (Ct.App.1981). We decline to impute to the prosecution as "knowledge" every conversation, or every statement, made to a prison official regarding a prisoner who may be charged with the commission of a crime. Our disclosure requirements as provided in N.M.R.Crim.P. 27, 28 and 30, N.M. S.A.1978 (Repl.Pamp.1980), contemplate that the State has a duty to disclose material evidence favorable to the defendant, of which it has knowledge. The defendant also has a corresponding duty to make available to the prosecution his or her list of witnesses and such documents and papers and reports which he or she intends to use as evidence at trial, and that there shall be a continuing duty of disclosure on both of the parties. *See State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979); *State v. Gallegos,* 96 N.M. 54, 627 P.2d 1253 (Ct.App.1981). Necessary to this concept of disclosure before trial, is the implicit understanding that both parties will exercise due diligence to ascertain the truth.

The defense in this case, at Colby and Stephens' first trial, had access to a wide variety of witnesses. The State prosecution made available its files, records, and witness list to the defense. A defense attorney even went so far as to characterize the discovery package made available to them by the State prosecution as a "pretty good set of discovery from the State of New Mexico." An attorney representing the then co-defendant Price, also indicated that the defense investigator did a "very thorough investigation throughout the State of New Mexico" and that "we pretty much interviewed everybody." Notably, in Colby and Stephens' witness list, was Warden Romero. Whether Colby and Stephens' attorneys actually ever interviewed Warden Romero is unclear from the record. However, Colby and Stephens certainly had the opportunity to interview him. Furthermore, Colby and Stephens never followed through on their intention to call Warden Romero as a defense witness.

Accordingly, we feel that the defense here had an affirmative city to exercise due diligence to discover witnesses that would tend to exculpate an accused if believed, before trial. *State v. Mabry, supra.* The trial record shows that both Stephens and Colby saw three or four prison guards at the gate before they left the recreation yard. If nothing else, Colby and Stephens should have revealed this information to their defense attorneys. The role of the accused in a criminal proceeding is not the passive role of a bystander, merely awaiting an outcome of a trial. The accused must vigorously contest the charges brought against him and refute such charges by such evidence that he is able to muster. The defense may not be unduly relaxed in their search for evidence that is favorable and expect deficiencies to be remedied with a motion for a new trial. *State v. Morris,* 101 Idaho 120, 609 P.2d 652 (1980). This was especially true in this case where Colby and Stephens elected to have an alibi defense. It was therefore incumbent upon them to discover *before* trial witnesses that would corroborate or substantiate their story. To now raise the issue that either Gallegos or his statement is "newly discov-

ered evidence" begs the question of the duty of the accused to help his own case *before* trial. If the petitioners' case was prejudiced by the nondiscovery of Gallegos it can be substantially attributed to Colby and Stephens' lack of due diligence and the nondiscovery was therefore self-inflicted. For these reasons, the existence of witness Gallegos and the existence and nature of his statements could and should have been discovered by them *before* trial and do not now constitute "newly discovered" evidence. *State v. Mabry, supra.*

## 2. *Affidavit of Confession by Price.*

■ The second issue is whether the affidavit containing the confession of Price warrants a new trial. Price executed the affidavit on May 24, 1979, some seven months after the original trial had begun. The affidavit was executed approximately five months after Price pled guilty to the voluntary manslaughter of Stevens. Colby and Stephens rely on *State v. Chavez,* 87 N.M. 38, 528 P.2d 897 (Ct.App.1974), to support the contention that a new trial is warranted based upon an affidavit confessing to the commission of a crime. *Chavez* is not persuasive under the facts in this case because in *Chavez* the confession to a robbery by another was also corroborated by other eyewitnesses. This case is distinguishable from *Chavez,* as Price's confession stands by itself as a rank assertion of criminal involvement for the death of Stevens, without benefit of corroboration. We have held that even if another person was prepared to testify, or had confessed that he, and not another, had committed a crime for which another was convicted, that would not be newly discovered evidence since such person could add nothing to testimony defendant could have given at trial. *State v. Valdez,* 95 N.M. 70, 618 P.2d 1234 (1980). *See also United States v. Steel,* 458 F.2d 1164 (10th Cir.1972); *United States v. Brewer,* 360 F.2d 112 (3rd Cir.1966); *People v. Gutierrez,* Colo., 622 P.2d 547 (1981); *Cody v. State,* 160 Ga.App. 86, 286 S.E.2d 321 (1981). In this light, the confession of Price is merely cumulative of the alibi defense already proposed by Colby and Stephens and would add nothing new to the trial. The confession of Price must probably produce a new result if a new trial is to be granted. *State v. Mabry, supra.* Colby and Stephens failed to satisfy the trial judge that the new evidence would probably change the result to an acquittal on retrial. *State v. Barry,* 25 Wash.App. 751, 611 P.2d 1262 (1980). Accordingly, the motion for a new trial based on the confession of Price was properly denied.

## 3. *Testimony of Eyewitness.*

■ The third issue is whether the trial court erred in not admitting into evidence at the hearing for a new trial the statement of the State eyewitness, Ronnie Fritts (Fritts). Fritts' statement purportedly contradicted his previous trial testimony and was to be introduced through the testimony of a defense investigator. This issue is without merit. It is well settled that evidentiary rulings are within the sound discretion of the trial court. *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App.) *cert. denied,* 87 N.M. 47, 529 P.2d 273 (1974). Absent a showing of abuse of that discretion, this Court will not disturb an evidentiary ruling of the trial court. *State v. Ewing,* 97 N.M. 235, 638 P.2d 1080 (1982). In this case, Colby and Stephens sought admission of Fritts' statement through an offer of proof. If the statement was admitted, they contend, the statement would support their alibi that Price was the killer of Stevens. The trial court determined that Fritts' statement was hearsay, because it was offered into evidence through the defense investigator. The trial court also determined that the defense had not demonstrated the unavailability of Fritts in order that his statement would have been admissible under the hearsay exception.

We find no error by the trial court in refusing to admit Fritts' statement because even if the statement had been admitted, it would not have contradicted his previous testimony but merely have been cumulative of the defense propounded by Colby and Stephens. N.M.R.Evid. 103, N.M.S.A.1978; *State v. Perez,* 95 N.M. 262, 620 P.2d 1287

(1980); *State v. Marquez, supra.* A new trial, therefore, is not warranted under this claim of error. *State v. Mabry, supra.*

### 4. *Testimony in Exchange for Rewards.*

█ The fourth issue is whether the executive clemency granted to three prosecution witnesses after the defendants' trial justifies a new trial. At trial, the witnesses denied they were promised that they would be released in exchange for their testimony. However, the three witnesses were granted executive clemency shortly after the trial was over. The defense contends that the witnesses' testimony was untrue and that it is proved by drawing an inference from the fact that they were released. There is no testimony to support the allegations and all the sworn testimony is to the contrary. Colby and Stephens rely upon *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) for the proposition that their constitutional rights of due process were violated by the nondisclosure of agreements made between the state and witnesses who testified against them. We disagree.

In *United States v. Traylor,* 656 F.2d 1326 (9th Cir.1981), the defendant alleged, as here, that his constitutional rights were violated by the nondisclosure of agreements made between the government and its two witnesses. However, it was the opinion of the court that where the nature of the agreements between the government and the witnesses were adequately revealed to the jury, by questioning of the witnesses by both the government and by defense counsel during cross-examination, then the defendant's due process rights were not violated. Thus, a new trial for the defendant was not required. In this case, during the examination of each prosecution witness who was an inmate, the prosecution elicited information that because of the concern for the safety for such witnesses offering testimony, each would be assured some type of incarceration that would protect their safety. Defense attorneys had the opportunity and did cross-examine on the safety precau-

tions which the State had promised and explored. We agree with the trial court that this claim does not support granting a new trial.

### 5. *Cumulative Weight of Evidence.*

Finally, Colby and Stephens contend that the cumulative weight of the evidence warrants granting a new trial. The contention of Colby and Stephens is that there has been an accumulation of irregularities which, if taken in the aggregate, would show an absence of a fair trial, thus warranting a new trial. *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). Since we have determined that the first four issues presented disclose no "irregularities," it follows that there has been no accumulation of irregularities warranting a new trial. *State v. McGuinty,* 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982); *State v. Haddenham,* 93 N.M. 394, 600 P.2d 846 (Ct.App. 1979).

Colby and Stephens received the benefit of a full and fair trial that resulted in their conviction for the first-degree murder of fellow inmate Stevens. This Court in *State v. Stephens, supra,* reviewed the conviction on appeal and affirmed the conviction after a complete examination of the trial record. On Colby and Stephens' motion for a new trial, based on newly discovered evidence, the trial court held an exhaustive hearing, examined the statements, heard the testimony, and declined to grant Colby and Stephens a new trial. This Court has once again reviewed the record of the trial and the motion for a new trial in this case and we find that the trial court did not err in denying a new trial to Colby and Stephens.

The trial court is affirmed.

IT IS SO ORDERED.

RIORDAN, J., and GEORGE L. ZIMMERMAN, District Judge, concur.