This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. 29,196**

**MARVIN GOMEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela-Shepherd, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Ray Twohig, P.C.
Ray Twohig
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Defendant appeals his convictions for second degree murder and tampering

with evidence, seeking reversal and attachment of double jeopardy. Defendant argues that the district court erred in denying his motion for mistrial and his motion to dismiss, both of which were based on contentions that the prosecutor violated Rule 11-608(B) NMRA and engaged in prosecutorial misconduct. Defendant also contends that the court erred by answering jury questions in violation of Rule 5-610(D) NMRA and failing to grant a mistrial when the jury was deadlocked. Because of the court's admission of improper character evidence, we reverse the conviction and remand for a new trial.

**FACTS**

In 2008, Defendant was convicted of the second degree murder of Gregory Greenawalt (Victim) and tampering with evidence. These convictions arose out of a confrontation occurring between Defendant and Victim in September 2006. On the night of the homicide, Defendant and his sister went to the same sports bar that Victim and several of his friends attended. At the bar, Victim appeared to be accosting and groping females. When Victim began to move toward Defendant's sister, Defendant intercepted and grabbed Victim, pushing him into a railing. The two men were quickly pulled apart.

Defendant then left the bar. Victim and his friends left as well after bar management asked them to leave. Victim observed Defendant going to his truck in

the parking lot. Victim and his friends got into their vehicle and drove to where Defendant was parked. Victim yelled at Defendant, told his driver to stop, then exited the vehicle, and began moving toward Defendant. Defendant testified that he saw Victim coming toward him with something in his hand. Defendant retrieved a shotgun from his car and showed it to Victim, who continued to come toward Defendant. Defendant then shot Victim and drove away. Victim's body was found with a knife by his legs.

At trial, Defendant claimed self defense in the shooting and testified that he saw Victim run toward him with something that looked like a weapon in his hand. Dispute arose as to whether Victim had a knife in his hand when he came toward Defendant, or whether this was an assertion made by Defendant after he learned that a knife had been found next to Victim's body. None of the bystanders saw the knife in Victim's hand and it could have fallen out of his pocket when he was shot. During trial, the prosecutor asked Defendant questions insinuating that Defendant lied about his respect for women and that Defendant videotaped women's clothed private parts without their knowledge. The defense objected and moved for a mistrial on the grounds of prosecutorial misconduct, irrelevance, and improper cross examination. The judge determined that the question was admissible under Rule 11-608 (B) NMRA. Defendant now appeals his convictions on grounds that the prosecutor's line

of questioning amounted to admission of improper character evidence and prosecutorial misconduct.

**DISCUSSION**

**A.      Improper Admission of Character Evidence**

Defendant claims that the court wrongfully admitted character evidence describing specific instances of conduct in violation of Rule 11-608(B). **[BIC 13]** We review the district court's admission of evidence for an abuse of discretion. *State v. Johnson*, 2010-NMSC-016, ¶ 40, 148 N.M. 50, 229 P.3d 523. "We . . . will not reverse in the absence of a clear abuse.  An abuse of discretion occurs when a ruling is against logic and is clearly untenable or not justified by reason." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 (internal quotation marks and citations omitted).  "A district court abuses its discretion when it misapplies or misapprehends the law." *State v. Pacheco*, 2008-NMCA-131, ¶ 34, 145 N.M. 40, 193 P.3d 587.

Defendant argues that the State's question regarding the video tape was improper character evidence, and its admission violated Rule 11-608(B). Rule 11-608 generally describes the admission of character evidence for impeaching a witness's character for truthfulness.  Under Rule 11-608(B), a party may not attack a witness's character for truthfulness with extrinsic evidence of specific instances of the witness's

4

conduct. Nonetheless, Rule 11-608(B)(1) states that parties may inquire into specific instances of conduct, "in the discretion of the court, if probative of truthfulness or untruthfulness, . . . on cross-examination of the witness . . . concerning the witness's character for truthfulness or untruthfulness."

In this case, we conclude that the State inquired into a specific instance that in actuality impeached Defendant's prior testimony regarding his respect for women, not his character for truthfulness. During direct examination, Defendant testified about the events that occurred inside the bar, stating that Victim "was treating [the] ladies and young girls in an inappropriate way." During cross examination, the prosecutor asked him questions insinuating that he lied about his respect for women and that he videotaped women's clothed private parts without their knowledge. The questions and answers went as follows:

> Q: And I believe one of the words you have used frequently is that [Victim's actions were] disrespectful.
> A: Uncalled—for and vulgar.
> Q: And disrespectful?
> A: And disrespectful.
> Q: And you believe that men should treat women with respect?
> A: I believe everybody should treat everybody with respect.
> . . . .
> Q: And in the apartment where you live, do you have any single female neighbors that you kind of keep an eye out for?
> A: No.
> Q: Are you respectful of the women that live where you are?
> A: Yes.
> Q: Isn't it true that you videotape women's breasts and bottoms from

5

your bedroom window when they're in the laundry? The defense objected and moved for a mistrial on the grounds of prosecutorial misconduct, irrelevance, and improper cross examination.

The prosecution responded that because Defendant's character had been put at issue through his testimony, the State had "the right to impeach his character." The State elaborated that, "[h]e has said that he looks out for his sister and other women. He has said he is respectful of women." The prosecutor conceded that she "planned it . . .[and] laid the foundation during . . . cross that he is respectful of women." After the hearing on the evidence's admissibility, the district court made a finding that "pursuant to Rule [11-]608, . . . the [S]tate had a good faith basis for making the inquiry." The court denied the motion for mistrial, admitted the evidence, and stated that no extrinsic evidence or further questioning would be offered on the matter.

We conclude that this was error. The State takes too broad an approach to the meaning of character for truthfulness when it argues that it may impeach Defendant's character for truthfulness under Rule 11-608 by contradicting Defendant's statement about his respect for women. In *State v. Miller*, we explained:

> Rule 608[(B)] is intended to be restrictive—and was amended to ensure that it would be restrictively interpreted by trial courts—the inquiry on cross-examination should be limited to these specific modes of conduct which are generally agreed to indicate a lack of truthfulness. The rule should not be broadened to allow questions about behavior which indicates a disregard for the rights of others which might reasonably be

6

> expected to express itself in giving false testimony whenever it would be to the advantage of the witness. Such an approach paves the way to an exception which will swallow the rule. It is but a small step from there to the hypothesis that all bad people are liars, an unverifiable conclusion which runs counter to the doctrine that everyone is innocent until proven guilty.

92 N.M. 520, 522, 590 P.2d 1175, 1177 (Ct. App. 1979) (internal quotation marks and citation omitted). In *Miller*, we concluded that questions involving hiring a person to kill or threaten people were not questions concerned with a defendant's character for truthfulness. *Id.* But, we held that questions concerning the buying or selling of stolen property, arranging illegal drug sales, failing to account for the proceeds of the sale of a diamond ring were inherently dishonest, and hence related to a defendant's character for truthfulness and permissible under Rule 11-608. *Id.* Furthermore, we have held in *De La O v. Bimbo's Restaurant, Inc.*, that "drunken and abusive conduct, resisting arrest, a municipal court battery conviction, and an instance where [the] plaintiff shot a third person with a pistol . . . were not probative of truthfulness or untruthfulness." 89 N.M. 800, 803, 558 P.2d 69, 72 (Ct. App. 1976).

The question at issue in this case involves Defendant's character for truthfulness no more than did the question in *Miller* about the accused hiring an assassin or the questions about the accused's abusive conduct in *De La O*. In the instant case, the State asked Defendant, "Isn't it true that you video tape women's breasts and bottoms from your bedroom window when they're in the laundry?"

7

Rather than attacking Defendant's character for truthfulness, this question attacked Defendant's assertion that he respected women and interjected impermissible evidence of bad character. This view is borne out by the State's arguments against the motion for mistrial, all of which spoke to the State's desire to impeach Defendant's professed character of being respectful to women. Such a question is outside of the scope of Rule 11-608.

Moreover, the function of the prosecutor's question was to smear Defendant's character, in general, by suggesting Defendant had a lewd disposition toward women. "Most federal and state jurisdictions, including New Mexico, long ago narrowed the witness impeachment character inquiry from one of general bad moral character to the specific character traits of truthfulness or untruthfulness, the standard now embodied in Rule 11-608(A)." *State v. Martinez*, 2008-NMSC-060, ¶ 28, 145 N.M. 220, 195 P.3d 1232. We have cautioned that although "[p]articular instances of conduct . . . may be inquired into on cross-examination of the principle witness himself . . . . [T]he possibilities of abuse are substantial." *State v. Marquez*, 87 N.M. 57, 62, 529 P.2d 283, 288 (Ct. App. 1974).

The State's line of questioning demonstrates the very abuse that Rule 11-608 was designed to avoid. Regardless of the prosecutor's subjective intent, the main function of the question about the video tape was to introduce evidence of the

8

Defendant's character for sleaziness. Rule 11-608(B) cannot be used as a guise to admit evidence of Defendant's bad character, in violation of long-established evidence law. *See Martinez*, 2008-NMSC-060, ¶ 28 (providing the history of character impeachment evidence). Thus, we conclude that the court wrongfully admitted the prosecutor's question about the videotape in violation of Rule 11-608.

**B.     The Admission of the Evidence Was Not Harmless Error**

Since we have concluded that the district court's admission of the evidence was error, we must determine if it was harmless. "Given that the error in [the] case was an evidentiary error, we employ the non-constitutional standard for the harmless error analysis." *State v. Branch*, 2010-NMSC-042, ¶ 15, 148 N.M. 601, 241 P.3d 602. Therefore, we shall "only conclude that a non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 (emphasis omitted). In other words, if "it is reasonably probable that the jury's verdict would have been different but for the error," we shall reverse the conviction. *Id*. at ¶ 54.

In determining whether this standard is met, we consider three factors, "whether there is (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will

9

appear minuscule; and (3) no substantial conflicting evidence to discredit the [s]tate's testimony." *Id*. at ¶ 56 (footnote omitted). Lastly, we note that "when assessing the harmfulness of error, it is not the role of the appellate court to reweigh the evidence against a defendant . . . . Rather, the focus is on whether the verdict was impacted by the error." *Id*. at ¶ 57.

In *State v. Payne*, we dealt with whether it was harmless error for the district court to allow a prosecutor to allude to inadmissible evidence indicating that the defendant was the aggressor based on the defendant's previous altercations. 96 N.M. 347, 350-52, 630 P.2d 299, 302-04 (Ct. App. 1981), *rev'd on other grounds*, *Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981). There, the district court permitted the prosecutor to suggest that, but for the rules of evidence, the jury would have heard such evidence. *Payne*, 96 N.M. at 351, 630 P.2d at 303. We held that alluding to prior conduct in which the defendant was the aggressor could not be construed as harmless error where the defendant was claiming self defense. *Id*. at 351-52, 630 P.2d at 303-04.

In the case at hand, Defendant testified that the altercation began because Victim was accosting women in a bar. Defendant further testified that the altercation escalated outside the bar, where Victim approached him with a weapon, and he shot Victim in self defense. The State then improperly attempted to elicit testimony from

Defendant that he photographed women's clothed breasts and buttocks without their consent. By referencing this information, the State told the district court that they were attempting to call into question Defendant's claim that he was defending women inside the bar when he first started the altercation.

Because the district court gave the jury instruction for self defense, we can assume that the court found some evidence to support the idea that, if true, Defendant's self-defense claim was reasonable. *See State v. Sutphin*, 2007-NMSC-45, ¶ 21, 142 N.M. 191, 164 P.3d 72 (explaining when the jury instruction of self defense should be given). Because self defense was crucial to the justification of the homicide, Defendant's credibility was critical to the jury's considerations. The State's attack on his credibility through bad-character evidence, unrelated to truthfulness, can reasonably be anticipated to have influenced the jury's verdict. If Defendant's reason for pushing Victim inside the bar was not true, his self defense claim might be discredited, as it would appear that Defendant started the initial altercation and subsequently shot Victim for no reason. Thus, even though there is substantial evidence to support Defendant's murder conviction, because the State's videotape reference improperly attempts to call into question the truth of Defendant's self-defense claim, this Court cannot construe it as minuscule in comparison to the other evidence. *See State v. Barr*, 2009-NMSC-024, ¶ 56 (stating that, in harmless error

analysis, the court examines whether the volume of permissible evidence makes the amount of improper evidence appear minuscule).

More importantly, at trial Defendant testified that Victim had a weapon, that Victim lunged at him, and that he acted in self defense in shooting Victim. This testimony directly contradicts the testimony presented by the State via witnesses who stated that they did not see Victim with a weapon in his hand as he approached Defendant. Thus, Defendant presented sufficient evidence calling into question the State's version of events.

Although the first prong appears to weigh in favor of harmless error, as the State presented substantial admissible evidence, the second and third prongs indicate that the error was not harmless. The improper evidence becomes consequential as it goes to the heart of Defendant's defense, and Defendant presented substantial conflicting evidence to discredit the State's case. Thus, the improper assertion of evidence indicating sleazy character in the guise of Rule 11-608 evidence, for the purpose of impeaching character for truthfulness, is not "minuscule" in comparison to the properly admitted evidence. As a result, we cannot determine that the State's improper questioning of Defendant was harmless error beyond a reasonable doubt. *State v. Aragon*, 2010-NMSC-008, ¶¶ 2, 36, 147 N.M. 474, 225 P.3d 1280. *See Payne*, 96 N.M. at 352, 630 P.2d at 304 ("We cannot say there was no reasonable

probability that the misconduct contributed to the conviction. Because of the misconduct, the defendant did not receive a fair trial."). It is reasonably probable that the jury's verdict would have been different without the introduction of this improper character evidence. Thus, since the admission of the videotape evidence on cross examination was not harmless error we reverse Defendant's conviction.

**C.     Double Jeopardy Does Not Attach**

To the extent the Rule 11-608 violation was raised as prosecutorial misconduct, we have addressed the existence of the rule violation and its effect above. As the Supreme Court has stated, "[t]he practice of injecting improper matters through cross-examination is so broadly prohibited that a presumption that prosecutors know to avoid the practice is warranted." *State v. McClaugherty*, 2008-NMSC-044, ¶ 53, 144 N.M. 483, 188 P.3d 1234 (alteration in original) (internal quotation marks and citation omitted). Thus, such a rule violation could result in a finding of prosecutorial misconduct. Nonetheless, we do not delve into such analysis at this time because it would not change our ruling unless a finding of prosecutorial misconduct would result in attachment of double jeopardy.

We now address whether barring reprosecution because of double jeopardy would be warranted by a finding of prosecutorial misconduct. We use a three-part test for determining whether retrial is barred when a defendant moves for a mistrial due

13

to prosecutorial misconduct. *State v. Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792. Retrial is barred under Article II, Section 15 of the New Mexico Constitution, when (1) the prosecutor's improper conduct "is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial"; (2) the prosecutor knows that the conduct is improper and prejudicial; and (3) the prosecutor "either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." *State v. McClaugherty*, 2008-NMSC-044, ¶ 25; *State v. Breit*, 1996-NMSC-067, ¶ 32. We apply an objective standard in evaluating the prosecutor's conduct at trial to determine whether the three prongs have been met. *McClaugherty*, 2008-NMSC-044, ¶ 27.

Although the prosecutor's conduct in this case was so unfairly prejudicial as to require a mistrial, the last two prongs of the test have not been met by the facts of this case. At trial, the district court found that "pursuant to Rule 608, . . . the [S]tate had a good faith basis for making the inquiry." From an objective standpoint, the prosecutor appeared to believe she was acting properly under Rule 11-608 in making such an inquiry into the videotape, as evidenced by her argument at the hearing. Thus, the prong requiring the prosecutor's knowledge that her conduct was improper and prejudicial has not been met. Lastly, since it appears as there was no knowledge of her error at the time it was made, we conclude that the prosecutor did not intend to

14

provoke a mistrial or willfully disregard the resulting mistrial, retrial, or reversal. Because all three prongs have not been met, we do not bar retrial. In addition, since we reverse on the Rule 11-608 violation, we do not address the jury issues raised by Defendant.

**CONCLUSION**

We reverse Defendant's conviction for second degree murder and tampering with evidence on grounds that there was reversible error due to the admission of improper character evidence in violation of Rule 11-608(B). We remand to the district court for retrial.

**IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:


_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

15