248 P.3d 165 (2011)
STATE of Washington, Respondent and Cross-Appellant,
v.
Paul E. STATLER, Appellant.
No. 28195-7-III.
Court of Appeals of Washington, Division 3.
March 15, 2011.
*168 David L. Donnan, Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Appellant.
Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Spokane, WA, for Respondent and Cross-Appellant.
Jacqueline Mc Murtrie, UW Law Clinic-Innocence Project NW, Seattle, WA, Michael L. Cook, Karen S. Park, Mark J. Arnot, Schulte, Roth & Zabel, LLP, New York, NY, for Amicus Curiae on behalf of the Innocence Network.
BROWN, J.
¶ 1 Paul Statler appeals his convictions for first degree robbery, two counts of first degree assault and two counts of drive-by shooting stemming from an April 17, 2008 drug-buy incident, one in a series of Spokane Valley robberies around that date. A witness who admitted his participation in the April 17 incident provided evidence against Mr. Statler at trial. Following conviction, the trial court denied Mr. Statler's request for a new trial based on newly discovered evidence from a different participating witness who claimed he could provide exculpating evidence.
¶ 2 Mr. Statler contends the trial court erred by denying his new-trial request, ineffective assistance of counsel, State misconduct in threatening the exculpating witness, and double jeopardy. The State cross-appeals, contending the court erred in imposing a mitigated exceptional sentence in its concurrent sentencing. And, in his pro se statement of additional grounds for review (SAG), Mr. Statler adds his concerns over amending the crime date, the effectiveness of his counsel, and due process.
¶ 3 We affirm.

FACTS
¶ 4 In April 2008, Clifford Berger and Joni Jeffries arranged with Eric Weskamp to purchase oxycontin from Anthony Kongchunji. At about 10:00 p.m. on April 17, Mr. Kongchunji and several other men arrived at the Berger-Jeffries' home in a truck. Mr. Kongchunji instructed Mr. Weskamp to come outside with the money. Mr. Weskamp got into the truck with Mr. Kongchunji and the driver, Matthew Dunham, a juvenile. He was immediately "confronted by a bunch of people in bandannas and masks." Report of Proceedings (RP) at 222.
¶ 5 The unidentified men beat Mr. Weskamp with a shotgun and a pistol, stole Mr. Berger and Ms. Jeffries' money, and left in the truck. Mr. Berger and a friend attempted to follow the men in the friend's car, but stopped when the men started firing at the car.
*169 ¶ 6 Police later arrested Mr. Dunham on a separate oxycontin-related robbery and he identified individuals, including Mr. Statler, involved in the incident at the Berger-Jeffries' home in exchange for a lesser sentence.
¶ 7 The State charged Mr. Statler (and trial codefendants, Tyler Gassman and Robert Larson) with first degree robbery; two counts of attempted first degree murder, or alternatively first degree assault; and two counts of drive-by shooting. The information stated the events occurred "on or about April 15, 2008." Clerk's Papers (CP) at 1-2. It stated each crime, except the drive-by shootings, occurred while "the defendants, as actors and/or accomplices, being at said time armed with a firearm." CP 1-3.
¶ 8 After receiving police reports in late 2008 that indicated the offense date was probably April 17, the State successfully requested to amend the information on January 20, 2009, changing the date of the occurrence from April 15, 2008 to April 17, 2008. The court imposed $8,000 in sanctions against the State ($2,000 per defense attorney) for the late amendment and continued the trial date to February 2, 2009.
¶ 9 Mr. Dunham and Mr. Kongchunji both pleaded guilty to their involvement in the April 17 incident. During the plea, Mr. Kongchunji acknowledged Mr. Statler's participation as part of the factual basis for his plea. Mr. Dunham was sentenced to 18 months and Mr. Kongchunji was sentenced to over 14 years. While Mr. Kongchunji originally implicated Mr. Statler, he began to change his story and point the finger at Mr. Dunham's brother and friend. Mr. Statler's defense counsel interviewed Mr. Kongchunji and then listed him as a witness. Mr. Kongchunji was not called as a trial witness.
¶ 10 On February 17, 2009, a jury found Mr. Statler guilty of first degree robbery, two counts of first degree assault, and two counts of drive-by shooting. The jury specially found he was armed with a deadly weapon at the time of the robbery and the assaults.
¶ 11 The court sentenced Mr. Statler to 87 months on count I, 138 months on count II, 93 months on count III, and 41 months on counts IV and V. In addition, the court imposed 360 months for firearm enhancements on counts I, II, and III; the court doubled the mandatory firearm enhancements because Mr. Statler had a prior first degree robbery conviction, which included a deadly weapon enhancement. Mr. Statler withdrew his claim of error concerning the doubling of his sentence before argument. The court ran all sentences, except the 360-month firearm enhancements, concurrently, which resulted in a mitigated exceptional sentence of 498 months. The court justified the sentence based on, "the age of Mr. Statler, the amount of time Mr. Statler was receiving in comparison to the two co-defendants, and the fact that no victims were seriously injured in the crime." CP at 315.
¶ 12 On February 26, 2009, Mr. Statler requested arrest of judgment under CrR 7.4 or a new trial under CrR 7.5, and on April 10, 2008, he amended his motion to request relief from judgment under CrR 7.8; all motions alleged that newly discovered testimony from Mr. Kongchunji could exonerate him. Mr. Statler offered a letter from Mr. Kongchunji to a codefendant's father stating that Mr. Statler was "not involved with any of the alleged incidents and the reason I know this is because I was involved." CP at 106. Mr. Kongchunji went on to explain the details of an unrelated April 21, 2008 robbery. In the letter, Mr. Kongchunji explained he refused to testify at a separate trial relating to another incident because he was threatened with additional charges if he changed his story from the one he previously told to police. Mr. Statler offered Mr. Kongchunji's testimony from another trial that resulted in an acquittal where Mr. Kongchunji testified that he and Mr. Dunham had devised a plan while in jail together to pin the robberies on Mr. Statler in order to protect Mr. Dunham's brother and their friend. Mr. Kongchunji did not specifically mention the April 17 incident.
¶ 13 Defense counsel filed a posttrial declaration, stating that he did not call Mr. Kongchunji because he threatened to claim his Fifth Amendment privilege against self-incrimination.
*170 ¶ 14 The trial court denied Mr. Statler's motions for relief from judgment, a new trial, or arrest of judgment, finding Mr. Kongchunji's testimony was not newly discovered evidence because he was available to testify before trial.
¶ 15 Mr. Statler appealed. The State cross-appealed the mitigated sentence.

ANALYSIS

A. New Trial Motion
¶ 16 The issue is whether the trial court erred by abusing its discretion in denying Mr. Statler's request for a new trial under CrR 7.5 or relief from judgment under CrR 7.8. Mr. Statler contends newly discovered evidence warrants relief under either of those rules.
¶ 17 While Mr. Statler originally requested relief under CrR 7.4, CrR 7.5 and CrR 7.8, he singles out rules CrR 7.5 and CrR 7.8 on appeal. Nonetheless, rulings involving all three rules are reviewed for abuse of discretion. See State v. Wilson, 113 Wash. App. 122, 135, 52 P.3d 545 (2002) (pertaining to CrR 7.4); State v. Thach, 126 Wash.App. 297, 318, 106 P.3d 782 (2005) (pertaining to CrR 7.5); State v. Swan, 114 Wash.2d 613, 642, 790 P.2d 610 (1990) (pertaining to CrR 7.8). The court abuses its discretion when it bases its decisions on untenable or unreasonable grounds. State v. Partee, 141 Wash. App. 355, 361, 170 P.3d 60 (2007).
¶ 18 A trial court will not grant a new trial on the basis of newly discovered evidence unless the moving party demonstrates that the evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." State v. Williams, 96 Wash.2d 215, 223, 634 P.2d 868 (1981). The absence of any one of these factors is grounds to deny a new trial. Id. Here, Mr. Statler fails to meet his burden.
¶ 19 When considering whether newly discovered evidence will probably change the trial's outcome, the trial court considers the credibility, significance, and cogency of the proffered evidence. State v. Barry, 25 Wash.App. 751, 758, 611 P.2d 1262 (1980). Significantly, the standard is "probably change," not just possibly change the outcome. Williams, 96 Wash.2d at 223, 634 P.2d 868. "[D]efendants seeking postconviction relief face a heavy burden and are in a significantly different situation than a person facing trial." State v. Riofta, 166 Wash.2d 358, 369, 209 P.3d 467 (2009).
¶ 20 Mr. Kongchunji's letter and testimony from a different trial do not specifically exonerate Mr. Statler from the charges here. Mr. Kongchunji mentioned in his letter and affidavit that Mr. Statler was not involved in the incident, but Mr. Kongchunji solely discussed an April 21, 2008 incident in his letter and did not mention the Berger-Jeffries incident in his later trial testimony. Notably, if Mr. Kongchunji had testified, then the State would have been permitted to impeach him with his conflicting prior statements, including his factual acknowledgment incriminating Mr. Statler at his plea hearing, rendering his testimony less credible. "[I]n evaluating probative force of newly presented evidence `the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" Riofta, 166 Wash.2d at 372, 209 P.3d 467 (quoting Schlup v. Delo, 513 U.S. 298, 332, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).
¶ 21 Indeed, if Mr. Kongchunji was a recanting witness (he is not because he did not testify at Mr. Statler's trial), the court would be required to assess his credibility. See State v. D.T.M., 78 Wash.App. 216, 221, 896 P.2d 108 (1995) (when witness recants by affidavit, court should hold hearing to evaluate witness's credibility). Regarding timing, it is suspect that Mr. Kongchunji changed his story to implicate Mr. Dunham's brother and friend after Mr. Kongchunji made a plea agreement where he acknowledged Mr. Statler's involvement but then received a 14-year sentence compared to Mr. Dunham's 18-month sentence. Based on the reduced cogency of Mr. Kongchunji's projected testimony, his reduced credibility, and the strength of Mr. Dunham's testimony regarding Mr. Statler's involvement, a different outcome is *171 not probable. While Mr. Statler points to a subsequent trial where Mr. Kongchunji testified and the defendant was acquitted, the time, place, and victims were completely different in that case. Thus, any impact Mr. Kongchunji could have on Mr. Statler's trial, based on the other trial, is merely a possibility not a probability.
¶ 22 Given all, Mr. Statler does not show the trial outcome would probably change if Mr. Kongchunji testified. This factor alone gave the court tenable grounds to deny the motion for a new trial. Even so, other unsupported factors are discussed below.
¶ 23 The second and third factors for a new trial relate to whether Mr. Statler was aware of Mr. Kongchunji's testimony before trial and whether Mr. Kongchunji was available to testify. Before trial, Mr. Kongchunji implicated Mr. Statler. After Mr. Kongchunji pleaded guilty, but before this trial, attorneys learned Mr. Kongchunji was changing his story and wanted to testify against Mr. Dunham's brother and friend. The evidence was, thus, not newly discovered.
¶ 24 Moreover, recantation-like statements are "inherently questionable." State v. Macon, 128 Wash.2d 784, 801, 911 P.2d 1004 (1996). Nevertheless, defense counsel inquired if Mr. Kongchunji would be willing to testify on Mr. Statler's behalf. He agreed and counsel listed Mr. Kongchunji as a witness. Mr. Kongchunji then changed his position again, saying he would take the Fifth Amendment to prevent self-incrimination relating to other offenses. Mr. Statler argues this threat of asserting the Fifth Amendment was sufficient to make Mr. Kongchunji unavailable and, therefore, not "discovered" before trial. But, discovery requires due diligence. Williams, 96 Wash.2d at 223, 634 P.2d 868. As the trial court pointed out, Mr. Statler could have used due diligence to at least attempt to compel Mr. Kongchunji's testimony.
¶ 25 Mr. Kongchunji's exculpating evidence viewed in isolation is likely material because it suggests Mr. Statler did not commit the crime; thus, satisfying the fourth factor. State v. Scott, 150 Wash.App. 281, 297, 207 P.3d 495 (2009). However, the fifth new trial factor requires that the evidence offered not be cumulative or impeaching. State v. Sublett, 156 Wash.App. 160, 194, 231 P.3d 231 (2010). In Sublett, the appellant requested a new trial based on a new witness who could exonerate him. Id. at 179, 231 P.3d 231. The court held the new witness's testimony would merely be used to impeach another witness who placed the appellant at the scene of the crime and, therefore, did not support a new trial. Id. at 194, 231 P.3d 231. Here, like in Sublett, Mr. Kongchunji's testimony would have been used to impeach Mr. Dunham's testimony. Thus, Mr. Statler does not meet the fifth criteria for a new trial.
¶ 26 Finally, amicus asserts "snitch" testimony is inherently unreliable. Justice Sanders in his dissent in State v. Ish, 170 Wash.2d 189, 241 P.3d 389, 399 n. 5 (2010) recently commented, "[T]he feds gave $100 million to snitches in one recent year  their reliability is dubious." But, Washington courts recognize that an informant or snitch may have an interest in testifying against the defendant; therefore, trial courts must give 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 6.05, at 184 (3rd ed. 2008) (WPIC) whenever there is uncorroborated accomplice testimony. State v. Sherwood, 71 Wash.App. 481, 485, 860 P.2d 407 (1993) (quoting State v. Harris, 102 Wash.2d 148, 155, 685 P.2d 584 (1984), overruled on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988)). Pattern jury instructions set out the appropriate wording for such an instruction. WPIC 6.05 states, "Testimony of an accomplice, given on behalf of the [plaintiff], should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth." The court provided this instruction to Mr. Statler's jury. A jury is presumed to follow the court's instructions. State v. Yates, 161 Wash.2d 714, 763, 168 P.3d 359 (2007). The jury found Mr. Dunham's testimony was truthful beyond a reasonable doubt. This court will not substitute its judgment for that *172 of the jury's. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
¶ 27 Given all, we conclude the trial court did not err in denying Mr. Statler's request for a new trial or relief from judgment based on newly discovered evidence.

B. Assistance of Counsel
¶ 28 Mr. Statler contends he was denied a fair trial based on ineffective assistance of counsel. He argues his counsel should have called Mr. Kongchunji to testify.
¶ 29 To prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's objectively deficient performance prejudiced him. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We strongly presume counsel was effective; the defendant must show no legitimate strategic or tactical reason supports defense counsel's actions. McFarland, 127 Wash.2d at 336, 899 P.2d 1251. To demonstrate prejudice, the defendant must show trial counsel's inadequate performance probably changed the outcome at trial. Id. at 335, 899 P.2d 1251. "The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel." State v. Kolesnik, 146 Wash. App. 790, 812, 192 P.3d 937 (2008), review denied, 165 Wash.2d 1050, 208 P.3d 555 (2009).
¶ 30 "We need not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." State v. Foster, 140 Wash.App. 266, 273, 166 P.3d 726 (2007) (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052). As discussed above, Mr. Statler has not shown the outcome of his trial would probably have been any different had Mr. Kongchunji testified. Without this showing, Mr. Statler cannot establish prejudice. See McFarland, 127 Wash.2d at 335, 899 P.2d 1251 (prejudice requires showing trial outcome would have been different). Moreover, Mr. Kongchunji was an unpredictable witness with varying statements and acknowledgements, more than one incriminating Mr. Statler; the decision not to compel his testimony is easily seen as tactical and, thus, does not amount to deficient performance. Therefore, Mr. Statler's ineffective assistance of counsel claim fails.

C. Government Misconduct
¶ 31 The next issue is whether government interference denied Mr. Statler of his due process right to a fair trial. Mr. Statler contends the State improperly threatened Mr. Kongchunji with perjury charges if he testified inconsistently with his earlier statements.
¶ 32 We review an alleged due process violation de novo. State v. Cantu, 156 Wash.2d 819, 831, 132 P.3d 725 (2006). Under the United States Constitution, the Sixth and Fourteenth Amendments guarantee persons accused of a crime the right to a fair trial. State v. Davis, 141 Wash.2d 798, 824-25, 10 P.3d 977 (2000). The Washington Constitution provides a similar safeguard. CONST. art. I, §§ 3, 22. Additionally, the right to due process "`provides heightened protection against government interference with certain fundamental rights.'" In re Parentage of R.F.R., 122 Wash.App. 324, 331, 93 P.3d 951 (2004) (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). But the right to a fair trial does not require a "perfect" trial. In re Pers. Restraint of Elmore, 162 Wash.2d 236, 267, 172 P.3d 335 (2007).
¶ 33 A defendant has the right to present a defense. State v. Lord, 117 Wash.2d 829, 867, 822 P.2d 177 (1991). This right includes the right to offer the testimony of witnesses and to compel their attendance, if necessary. State v. Maupin, 128 Wash.2d 918, 924, 913 P.2d 808 (1996) (citing Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). "If a defense witness is threatened and those threats effectively keep that witness off the stand, the accused is deprived of due process of law." State v. Carlisle, 73 Wash.App. 678, 679, 871 P.2d 174 (1994) (citing Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972)). But, where the State "`simply provides the witness with a truthful warning, no constitutional violation occurs.'" Carlisle, 73 *173 Wash.App. at 679, 871 P.2d 174 (quoting United States v. Jackson, 935 F.2d 832, 847 (7th Cir.1991)). The Ninth Circuit has noted, "[p]erjury warnings are not improper per se and that `the Sixth Amendment is not implicated every time a prosecutor or trial court offers advice regarding the penalties of perjury.'" United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir.1998) (quoting United States v. Davis, 974 F.2d 182, 187 (D.C.Cir. 1992)). If a defendant alleges government interference, he or she must "demonstrate misconduct by a preponderance of the evidence." Id. at 1188.
¶ 34 Here, Mr. Kongchunji implicated Mr. Statler when pleading guilty. Apparently, Mr. Kongchunji gave other statements incriminating Mr. Statler in a free talk. Upon indicating he would testify otherwise, detectives (not the prosecutor) cautioned Mr. Kongchunji about offering false testimony and reminded him of the consequences of perjury. But, because the detectives merely provided a truthful warning as approved in Carlisle, no misconduct occurred. Therefore, the detectives' perjury remarks did not violate Mr. Statler's right to due process or deny him a fair trial.

D. Double Jeopardy
¶ 35 The issue is whether Mr. Statler's assault and drive-by shooting convictions violate double jeopardy principles. Mr. Statler contends the assaults and drive-by shootings arise out of the same facts.
¶ 36 Both the United States Constitution and the Washington Constitution protect a person from twice being placed in jeopardy for the same offense. U.S. CONST. amend. V; CONST. art. I, § 9; In re Pers. Restraint of Borrero, 161 Wash.2d 532, 536, 167 P.3d 1106 (2007). Both provisions prohibit multiple punishments imposed for the same act unless the legislature intended to authorize multiple punishments for the crimes in question. State v. Baldwin, 150 Wash.2d 448, 454, 78 P.3d 1005 (2003). Where a defendant is convicted under multiple criminal statutes for the same act, the court must determine whether the legislature intended multiple punishments, first by looking to the language of the statutes and alternatively by employing the "same evidence" test. Borrero, 161 Wash.2d at 536-37, 167 P.3d 1106 (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Here, the statutory language does not disclose any legislative intent, so this court applies the same evidence test  whether the offenses are identical in fact and in law. Borrero, 161 Wash.2d at 537, 167 P.3d 1106. If each offense contains an element not contained in the other requiring proof of a fact that the other does not, the offenses are not the same. Id.
¶ 37 Under the same evidence test, the two crimes of drive-by shooting and assault do not violate double jeopardy because each requires proof of facts that the other does not. Drive-by shooting requires the discharge of a firearm, which the other crime does not. RCW 9A.36.045(1). Assault requires intent to inflict great bodily harm, which is not required for drive-by shooting. See RCW 9A.36.011(1); RCW 9A.36.045(1). Division Two of this court has similarly held second degree assault and drive-by shooting convictions do not violate double jeopardy. State v. Vincent, 131 Wash.App. 147, 158, 120 P.3d 120 (2005). Because each crime requires proof of facts not required by the other, Mr. Statler's double jeopardy rights were not violated.

E. Mitigated Exceptional Sentence
¶ 38 The cross-review issue is whether the sentencing court erred by imposing a mitigated exceptional sentence. The State contends the court's reasons for imposing the exceptional sentence were not substantial and compelling.
¶ 39 Mr. Statler's first degree assault convictions are considered serious violent offenses under RCW 9.94A.030(45). "Whenever a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, ... [a]ll sentences imposed under (b) of this subsection shall be served consecutively to each other." RCW 9.94A.589(1)(b). By ordering the sentences to be served concurrently, the court imposed a mitigated exceptional sentence.
*174 ¶ 40 A trial court may impose a sentence outside the standard sentencing range if it finds that substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.535. In reviewing an exceptional sentence, we may reverse if we find, "(a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A.585(4).
¶ 41 Additionally, we review the trial court's findings of fact made in support of an exceptional sentence under the clearly erroneous standard. State v. Nordby, 106 Wash.2d 514, 517-18, 723 P.2d 1117 (1986). Under that standard, reversal is required only if the findings are not supported by substantial evidence. State v. Branch, 129 Wash.2d 635, 646, 919 P.2d 1228 (1996). Such is not the case here.
¶ 42 The sentencing court considered Mr. Statler's age, the amount of time Mr. Statler was receiving in comparison to the other codefendants, and the fact that no victims were seriously injured in the crime. The record shows Mr. Statler was 21 years old when he committed the offenses, his presumptive sentence was 40 years compared to Mr. Kongchunji's 14 years and Mr. Dunham's 18 months, and neither Mr. Weskamp, Mr. Berger, or his friend were seriously injured during the robbery. Based on this evidence, substantial and compelling reasons justify an exceptional sentence. Additionally, because the reasons supplied by the sentencing court are supported by the record and the sentence imposed was not clearly too lenient, we find no basis to reverse.

F. SAG
¶ 43 Pro se, Mr. Statler contends he was prejudiced by the State's late amendment of the information. We review a decision to grant a motion to amend the information for abuse of discretion. State v. Brett, 126 Wash.2d 136, 155, 892 P.2d 29 (1995). CrR 2.1(d) allows an information "to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant has the burden of showing prejudice. State v. Brown, 74 Wash.2d 799, 801, 447 P.2d 82 (1968).
¶ 44 Here, Mr. Statler was notified the offense date was "on or about April 15, 2008." CP at 1-2. Changing an offense date by two days would be covered under the "on or about" language. Further, other courts have held, "[w]here the [information] alleges that an offense allegedly occurred `on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date." State v. Bergin, 214 Conn. 657, 574 A.2d 164, 173 (1990); see also United States v. Mitov, 460 F.3d 901, 907 (7th Cir.2006). Further, no prejudice exists if time remains to prepare a defense. State v. Murbach, 68 Wash.App. 509, 512, 843 P.2d 551 (1993). The court granted the motion to amend on January 12, 2009 and continued the trial until February 2, 2009. Mr. Statler had ample time to prepare his defense; thus, he cannot meet his burden to show prejudice.
¶ 45 Mr. Statler next contends he was denied effective assistance of counsel when counsel refused to call an alleged alibi witness. As set forth above, to prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's objectively deficient performance prejudiced him. McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251 (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). Mr. Statler's argument fails because these actions or inactions comprise trial tactics or strategy, or concern matters outside the record. Kolesnik, 146 Wash.App. at 812, 192 P.3d 937; McFarland, 127 Wash.2d at 335, 899 P.2d 1251 (the court will not review matters outside of the trial record on direct appeal).
¶ 46 Mr. Statler's final contention concerns alleged due process violations for allowing false testimony. As discussed above, the right to due process of law includes the right to a fair trial. Davis, 141 Wash.2d at 824-25, 10 P.3d 977. And, the right to a fair trial includes the exclusion of perjured testimony. In re Pers. Restraint of Benn, 134 Wash.2d 868, 936, 952 P.2d 116 (1998). But, no perjury has been established. *175 Moreover, credibility determinations are left for the trier of fact. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004). Mr. Dunham testified to his version of the events and was tested on cross-examination. Additionally, the court instructed the jury to use caution when relying on testimony from an accomplice. The jury had to determine whether there was perjured testimony, and apparently rejected the defense arguments. Thus, we cannot say Mr. Dunham's testimony violated Mr. Statler's due process rights.
¶ 47 Affirmed.
I Concur: SWEENEY, J.
KULIK, C.J. (dissenting).
¶ 48 Paul Statler was convicted of robbery, two assaults, two drive-by shootings, and sentenced to over 41 years. His counsel's[1] failure to pursue exculpatory testimony from Anthony Kongchunji constituted deficient performance and prejudiced Mr. Statler. I, therefore, dissent from the majority. I would vacate Mr. Statler's convictions and remand for a new trial.
¶ 49 The test for ineffective assistance is well established and requires the defendant to show that "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).

Deficient Performance
¶ 50 The reasonableness of counsel's representation is viewed in light of all of the circumstances. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991). There is a strong presumption that counsel's representation was effective. State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994) (quoting Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir.1985)). Generally, the decision to call a particular witness is presumed to be a matter of legitimate trial tactics. In re Pers. Restraint of Davis, 152 Wash.2d 647, 742, 101 P.3d 1 (2004). However, this presumption can be overcome by showing that counsel failed to investigate or subpoena a necessary witness. Id.
¶ 51 Our Supreme Court has recently reaffirmed that "a criminal defendant can rebut the presumption of reasonable performance by demonstrating that `there is no conceivable legitimate tactic explaining counsel's performance.'" State v. Grier, ___ Wash.2d ___, ___, 246 P.3d 1260 (2011) (quoting State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004)). Significantly, Grier also recognizes that "[n]ot all strategies or tactics on the part of defense counsel are immune from attack." Id. "`The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" Id. (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)).
¶ 52 Here, defense counsel stopped pursuing Mr. Kongchunji's testimony when Mr. Kongchunji's counsel denied access to him. The Ninth Circuit Court of Appeals has repeatedly found similar failures to adequately investigate and present known exculpatory evidence at trial to constitute deficient and prejudicial performance by counsel. See, e.g., Lord v. Wood, 184 F.3d 1083, 1096 (9th Cir.1999) (finding deficient performance and prejudice where "trial counsel had at their fingertips information that could have undermined the prosecution's case, yet chose not to develop this evidence and use it at trial"); Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir.1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.").
¶ 53 At a posttrial hearing, the trial court pointed out that defense counsel could have used due diligence to at least attempt to compel Mr. Kongchunji's testimony. This followed defense counsel's submitting the letter *176 and declaration of Mr. Kongchunji. The letter stated, in part:
I found out that Paul [Statler], Tyler [Gassman], and Robert [Larson] lost their recent trial and I'm stunned. I don't see how the jury could believe Matthew [Dunham] at all because I've read his statement[s] and they are all lies.
I thought that I should let you know that Paul, Tyler, and Robert were not involved with any of the alleged incidents and the reason I know this is because I was involved.
Clerk's Papers (CP) at 113 (emphasis added). Likewise, when testifying in Mr. Statler's second trial, Mr. Kongchunji stated that he committed the Dishman robbery with the "[s]ame people I always go rob people with; Larry, Nick, Matt." CP at 195 (emphasis added). Clearly, this testimony refers to Larry Dunham, Nicholas Smith, and Matthew Dunham, codefendants in other robberies. Mr. Kongchunji possessed crucial exculpatory evidence. His testimony was necessary to ensure that Mr. Statler received a fair trial in this case.
¶ 54 The majority concludes that defense counsel's failure to call Mr. Kongchunji as a witness at trial was a matter of trial tactics. Accordingly, the majority states: "Mr. Kongchunji was an unpredictable witness with varying statements and acknowledgements, more than one incriminating Mr. Statler; the decision not to compel his testimony is easily seen as tactical." Opinion at 172.
¶ 55 But this is not the issue. Defense counsel had already made the tactical decision to call Mr. Kongchunji; what he lacked was the legal knowledge and skills to secure his testimony. Stated differently, he was apparently unaware of the procedures available to him to compel Mr. Kongchunji's testimony.
¶ 56 Defense counsel admitted that he did not further interview or call Mr. Kongchunji to the stand because he "didn't feel that it was within [his] province to second-guess why ... Mr. Kongchunji's attorney was cutting [him] off or throwing up the [Fifth Amendment] brick wall."[2] Report of Proceedings (May 20, 2009) (RP) at 7-8. He also stated that "[i]f there was additional due diligence that I could have exercised at that point, your Honor, I wasn't aware of it," and that "I'll fall on my sword for my inexperience as to that." RP at 9.
¶ 57 Defense counsel knew that Mr. Kongchunji possessed crucial exculpatory evidence, yet he never asked the court for leave to conduct additional interviews or to rule on whether Mr. Kongchunji's testimony would have received Fifth Amendment protection. Instead, he believed that Mr. Kongchunji was unavailable if his counsel said he was. As a result, it is not possible to know whether or to what extent Mr. Kongchunji would have been excused from testifying at trial.[3]
¶ 58 The State also contended the reason defense counsel made the decision not to call Mr. Kongchunji was a matter of trial tactics. But no competent attorney after having learned the full extent of Mr. Kongchunji's testimony would have failed to put him on the stand, especially given the State's reliance on a witness no more credible than Mr. Kongchunji. Counsel's failure to adequately investigate and call a witness purporting to have actual knowledge of Mr. Statler's innocence was unreasonable in this case and, therefore, deficient.

Prejudice
¶ 59 To demonstrate prejudice, Mr. Statler must show that
"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Mr. Statler "need not *177 show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693, 104 S.Ct. 2052.[4]
¶ 60 Mr. Kongchunji had a powerful incentive to implicate Mr. Statler prior to receiving a 14-year prison term for his own admitted involvement in this crime and the related robberies; namely, a desire to avoid an even more severe sentence. With this incentive exhausted, Mr. Kongchunji had no discernable motive to continue falsifying information. To the contrary, Mr. Kongchunji no doubt weighed considerable disincentives prior to coming forward, including criminal liability for perjury or similar crimes, as well as implicating Larry Dunham and Nicholas Smith in another robbery. That Mr. Kongchunji would be willing to take such risks without perceivable reward strongly suggests that his testimony would be credible.
¶ 61 To say that Mr. Kongchunji's testimony is necessary understates its importance. The State secured a conviction in this matter based solely upon Matthew Dunham's uncorroborated testimony. Detective William Francis testified that Matthew Dunham's statement was the only evidence police had against Mr. Statler. Mr. Kongchunji's letter and subsequent testimony in Mr. Statler's second trial not only exculpate Mr. Statler in respect to the Berger-Jeffries robbery, but also explain how and why Mr. Statler became implicated by Matthew Dunham and Mr. Kongchunji in the first place. This evidence also has proven cogency. Mr. Statler was acquitted following a subsequent trial alleging his involvement in the related Dishman robbery after Mr. Kongchunji testified to its participants. There can be no doubt that Mr. Kongchunji's testimony was necessary here.
¶ 62 Focusing, as I am required, "on the fundamental fairness of the proceeding whose result is being challenged,"[5] I conclude that counsel's deficient performance prejudiced Mr. Statler to an extent that undermines confidence in the outcome of his trial and creates a serious likelihood that justice has not been done.
¶ 63 Accordingly, I respectfully dissent from the majority's conclusion that Mr. Statler received effective assistance of counsel. I would reverse Mr. Statler's convictions and remand for a new trial.
NOTES
[1] Appellate counsel did not serve as trial counsel.
[2] The rules of professional conduct permit counsel to contact a represented witness in such a situation after obtaining permission from the court. RPC 4.2.
[3] Had Mr. Kongchunji been excused from testifying by the trial court, counsel would have then preserved the unavailability of this testimony for purposes of his new trial motion.
[4] The majority appears to apply a heightened prejudice standard when reviewing Mr. Statler's ineffective assistance claim when it writes that "[w]ithout this showing [that the outcome of his trial would probably have been different], Mr. Statler cannot establish prejudice." Opinion at 172. The Strickland court noted that the showing of prejudice that must be made under the newly discovered evidence standard is significantly higher than the showing that must be made under an ineffective assistance claim. Strickland, 466 U.S. at 694, 104 S.Ct. 2052 ("The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present. ... An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower.").
[5] Strickland, 466 U.S. at 696, 104 S.Ct. 2052.