

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39808-1-III |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LORENZO JOSE JUAREZ, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J.—Lorenzo Jose Juarez seeks reversal of his conviction for rape of a child in the first degree. He contends the superior court committed error when allowing the State to amend the information, after both parties rested at trial, to expand the charging period of the crime. He also asserts that his trial counsel performed ineffectively when failing to object to a law enforcement officer's vouching for the victim, which vouching separately constituted prosecutorial misconduct. We reject each contention. We remand, however, for the superior court to correct a scrivener's error in the judgment and sentence and to delete a community custody condition that requires polygraph examinations to detect deviant sexual behavior.

FACTS

This appeal surrounds charges brought against Raymond Hernandez for raping M.H., a child. Raymond Hernandez, M.H.'s father and a friend of Juarez for thirty years, had procured Juarez to babysit M.H. No one knows for sure the date of the rape, which in part gives rise to this appeal. M.H. was born on March 20, 2008.

In March 2021, at the age of 13, M.H. reported two earlier sexual assaults by Lorenzo Juarez. According to M.H., during the first assault, Juarez, while at her house, took her into the kitchen, sat her on a counter, pulled down her pants, and put his tongue on her vagina. On the second occasion, Juarez found a condom in Raymond Hernandez's bedroom. Juarez began placing the condom on his penis and then directed M.H. to "put it all the way on." Clerk's Papers (CP) at 3. The first assault formed the conviction for rape of a child.

On August 30, 2021, Yakima Police Department Detective Mario Vela conducted a child forensic interview of M.H. During the interview, M.H. reported that her father requested Lorenzo Juarez to babysit her and her brother instead of sending them to daycare. The assaults occurred during the babysitting. M.H. estimated she was five or six years old at the time of the assaults. During the interview, M.H. stated the conduct started in 2016 or 2017, although she "was not sure of the date." CP at 2. Based on her birthdate, M.H. was seven, eight, or nine, not five or six years of age, assuming the

2

assaults occurred in 2016 or 2017.

During trial, M.H. testified, contrary to her police interview, that the assaults by

Lorenzo Juarez occurred in 2012 or 2013.  She further averred, consistent with her law

enforcement interview, that the assaults occurred when she was five or six years old.

Nevertheless, with a birthdate of March 20, 2008, the assaults occurred in 2013 through

2016 if they transpired when M.H. was five or six years old.  During cross-examination,

defense counsel questioned M.H. regarding the timing of the alleged assaults:

> Q  Okay.  Do you recall which incident it was that occurred in 2012 or '13?
> A:  Can you say that again?
> Q.  Sure.  The incident -- did the incident with the condom occur in 2012 or '13 or the incident with the licking occur in 2012 or '13?
> A.  I'm not sure what days I got taken care of, but I'm not sure how old I was.
> Q.  But you did testify that one of these incidents occurred in 2012 or '13?
> A.  Yes.
> Q.  Do you recall which one?
> A.  2013.
> Q.  Which incident, the licking incident or the incident with the condom?
> A.  The incident with the licking.
> Q.  Okay.  That occurred in 2012 or '13.  Very well.

Report of Proceedings (RP)  at 590.

> Q.  All right.  Do you recall approximately how old were you when the incident with the condom occurred?
> A.  No.

Q. Well, other than you must have been older than when the licking occurred.

A. (Witness nods head).

Q. I'll let the record reflect the witness nodded her head yes.

RP at 600.

Q. And you told Detective Vela these incidents occurred in 2016 or '17, didn't you?

A. Yes. Because I'm not sure what years they were or how old I was.

Q. Okay. Well, to be—we have already established that you turned seven years of age in 2015; is that correct?

A. Yes.

Q. And you turned eight years of age in 2016?

A. Yes.

Q. And nine years of age in 2017?

A. Yes.

RP at 611-12.

The prosecutor reexamined M.H.:

Q. I just have a few questions for you, [M.H.]. So you had indicated earlier that you thought that this happened when you were five or six?

A. Yes.

Q. Why do you think it happened when you were five or six?

A. Because that's when I like, I was smaller.

RP at 612.

During an interview by Detective Mario Vela, M.H.'s father, Raymond Hernadez, commented that the babysitting by Juarez occurred during the months of October 2014

through March 2015. Hernandez's identification of the time of the babysitting conflicted

with M.H.'s guesses as to the date of the sexual assaults.

At trial, Raymond Hernandez confirmed his statement to law enforcement.

Hernandez testified that he encountered a need for childcare beginning in October 2014.

Hernandez averred that, for four to six weeks, Lorenzo Juarez babysat M.H. and her

brother while Hernandez worked. Hernandez calculated that, if the babysitting started in

October 2014, M.H. would have been six years old at the time. He conceded, however,

he lacked "precise recollection" of when the babysitting occurred. RP at 452.

## PROCEDURE

On September 14, 2021, the State of Washington charged Lorenzo Juarez with

rape of a child in the first degree and child molestation in the first degree against Lorenzo

Juarez. This appeal only concerns the former charge. The rape charge arose from the

placing of the tongue on the vagina. The child molestation charge related to placing a

condom on the penis. The information alleged as to the rape:

> *On, about, during or between* October 1, 2014 and March 31, 2015,
> in the State of Washington, you engaged in sexual intercourse with and you
> were at least 24 months older than the victim, M.H., a person who was less
> than 12 years old and not married to you and was not in a state registered
> domestic partnership with you.

CP at 6 (emphasis added). The State filed Detective Mario Vela's declaration of

probable cause with the charging information. The declaration repeated M.H.'s first

allegation, during her police interview, that the assaults occurred when she was five or

six years of age. The declaration also retold M.H.'s later interview statement that the

assaults occurred in 2016 or 2017. To repeat, M.H. changed the dates of the assaults to

2012 or 2013 during trial testimony.

During the cross-examination of Detective Mario Vela, Vela opined that

complainants, such as M.H, delay reporting sexual assaults because of the need for time

to gather the courage to disclose the abuse. Detective Vela acknowledged, however,

that a delayed disclosure could potentially arise from fabrication or manipulation.

On redirect, the State elicited:

> Q. Okay. And so let's talk briefly about forensic interviews. And you had indicated earlier that they are designed in a specific way to not be suggestive. Does that mean forensic interviews can weed out fabrications or manipulation? Are you able to tell that when you're doing an interview?
> A. Sometimes you can, yes.
> Q. Did you note that in this case?
> A. No.

RP at 478.

On re-cross-examination, defense counsel questioned Detective Vela about

his methods for determining the veracity of statements made by child witnesses:

> Q. Okay. So you have your child forensic interviews and investigations to try to determine the veracity of complaints?
> A. Correct.
> Q. And, well, you're only human beings, right?
> A. Right.

6

Q. So you're not perfect?
A. Nobody is.
Q. And Yakima Police Department isn't perfect?
A. It's not.
Q. And the child forensic interviews or the child interview process isn't perfect?
A. Depends who you ask. It's a guideline.
Q. It doesn't always ferret out false allegations; does it?
A. It has— in my occasion it has.
Q. Do you think it always does?
A. No.
Q. So it's not perfect. And are you aware of any instances where the falsity of sexual abuse allegations are determined during trial or after trial?
A. don't think I understand your question.
Q. Are you aware—well, again we have established that sometimes allegations of sexual abuse, even child sexual abuse are false. Are you aware of any instances where that falsity has come to light when the case is at trial or even after trial?
A. I have not in my experience, no.
Q. Not in your experience. What about in your knowledge?
A. Not that I can recall or speaking to another detective or anything like that, not that it's come up.
Q. Do you pay attention to the current events?
A. Not necessarily, no.
Q. Okay.

RP at 479-80.

After the State rested, the State asked the trial court leave to amend the information to align with M.H.'s trial testimony. The proposed amendment revised the charging period to "[*o*]*n, about, during or between* January 1, 2012, and March 31, 2015." CP at 26 (emphasis added).

7

Lorenzo Juarez objected to the amendment to the information based on prejudice

to him. His defense counsel commented that he prepared Juarez's defense based on a

charging window of seven months in 2014 and 2015. If Juarez needed to respond to a

charging period of three years and three months, counsel would have prepared the

defense differently. Counsel added that: "we have employment records which could have

provided an alibi." RP at 669. Counsel later conceded that the records might not exist,

but he emphasized that he never searched for the records because of the limited charging

period.

During argument on the motion to amend, the trial court asked defense counsel:

> THE COURT: Do you have any specific offer with regard to
> potential alibi or exculpatory information?
> MR. OAKLEY: No, Your Honor. In reliance of the charge of 2014
> or '15, I didn't pursue that avenue of investigation.
> Mr. Juarez—Mr. Juarez testified that he was working during that
> time frame. And we may have been able to present evidence regarding his
> employment that would have bolstered his defense. So the amendment
> would necessarily prejudice under any standard.

RP at 679. The trial court granted the State's motion to amend the information.

During testimony in his own defense, Lorenzo Juarez acknowledged that he

babysat M.H. and her brother while Raymond Hernandez experienced daycare challenges

and difficulties with DSHS. The babysitting occurred shortly before his estrangement

with Hernandez. He did not recall the year of the disaffection. Juarez averred that he

8

babysat only when he was between jobs.  He denied ever touching M.H.'s genitals,

licking her vagina, or demonstrating how to apply a condom.

The jury convicted Lorenzo Juarez of first degree rape but acquitted him of first

degree child molestation.  The superior court ordered a lifetime term of community

custody.  In the accompanying judgment and sentence, the court marked a box stating,

"The crime in Count 1 was predatory, pursuant to RCW 9.94A.836."  CP at 55.  As a

condition of community custody, Juarez is required to "[s]ubmit to regular polygraph

examinations about deviant sexual behavior upon the request of the supervising

community corrections officer."  CP at 58.

## LAW AND ANALYSIS

On appeal, Lorenzo Juarez contends the trial court violated his constitutional right

to notice when the court permitted the State to amend the date of the allegations in the

information after the parties rested.  Juarez adds that prosecutorial misconduct and

ineffective assistance of counsel denied him a fair trial.  Assuming this court affirms his

conviction, Juarez requests that this court direct the trial court to correct a scrivener error

and to restrict the administration of polygraph examinations.  We affirm the conviction,

but remand to correct the judgment and limit the authority for polygraphs.

In a statement of additional grounds, Lorenzo Juarez contends the trial court

violated his constitutional right to be present during an omnibus hearing.  He also

requests that this court order discovery from the State's attorney. We reject Juarez's statements.

Amended Information

Lorenzo Juarez contends that the trial court violated his rights to notice and to present a defense by allowing the State to expand the charging period to include the timeframe described in M.H.'s testimony. The State responds that the original information included the words "*on, about, during or between* October 1, 2014 and March 31, 2015." CP at 6 (emphasis added). We label the emphasized words as "the flexible prepositions." Thus, according to the State, Juarez knew the charging time frame was flexible such that the State either did not need to amend the information to expand the charging window or the State held the prerogative to amend the information any time before verdict. The State also contends the superior court did not err when permitting the amendment because Juarez showed no prejudice.

We review a decision permitting such an amendment of the information for abuse of discretion. *State v. Brooks*, 195 Wn.2d 91, 96, 455 P.3d 1151 (2020). A trial court abuses its discretion by applying the wrong legal standard, when the facts fail to satisfy the standard, or if the decision falls outside the range of acceptable choices under the applicable facts and legal standard. *State v. Lamb*, 175 Wn.2d 121, 130, 285 P.3d 27 (2012).

One constitutional provision and one court rule govern amendments to a charging information. Under CrR 2.1(d), a charging document may be amended at any time before the verdict, provided that the "substantial rights of the defendant are not prejudiced." The State moved to amend the information against Lorenzo Juarez before the verdict.

CrR 2.1(d) operates within the confines of article I, section 22 of our state constitution. *State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d 854 (1987). Article I, section 22 of the Washington Constitution declares:

> In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him.

Section 22 directs the trial court to exercise caution when allowing the amending of an information after trial has already begun because defense counsel has geared pretrial motions, voir dire of the jury, opening argument, and examination and cross-examination of witnesses to the precise charges. *State v. Pelkey*, 109 Wn.2d 484 (1987).

Article I, section 22 of the Washington State Constitution requires that every essential element of a crime be included in the charging document so that the defendant may prepare a defense to meet the allegations. *State v. Brooks*, 195 Wn.2d 91, 97 (2020). The charging instrument conforms to constitutional requirements, even if the information vaguely posits some allegations significant to the defense, if the information alleges every essential element of the offense. *State v. Mason*, 170 Wn. App. 375, 378-79,

11

285 P.3d 154 (2012).

Cases involving amendments to the charging date hold that the date is not a material element of the crime. *State v. Brooks*, 195 Wn.2d 91, 98 (2020). Thus, amendment of the date is a matter of form rather than substance. *State v. Brooks*, 195 Wn.2d 91, 98 (2020).

Article I, Section 22 imposes no requirement on the State to allege the date of the crime or crimes. In turn, Washington case law recognizes that the State need not fix a precise time for the commission of the offense if it cannot intelligently do so. *State v. Carver*, 37 Wn. App. 122, 126, 678 P.2d 842 (1984). Actually, Washington cases suggest that the State need not plead precise dates even if it could intelligently do so. The allegation of time in an information is immaterial other than the charges must show that the statute of limitations does not bar the prosecution. The law recognizes that young victims will not be able to identify a specific date of an assault. *State v. Carver*, 37 Wn. App. 122, 126 (1984). A child may also repress memory of the date. *State v. Brooks*, 195 Wn.2d 91, 99 (2020).

The State highlights that the original information inserted the flexible prepositions when listing the dates of between October 1, 2014 and March 31, 2015. The amended information revised the charging period to "[o]n, about, during or between January 1, 2012, and March 31, 2015." CP at 26 (emphasis added). Thus, the amendment also

utilized the flexible prepositions. The State asserts that the prepositions preclude a finding that the amendment prejudiced Lorenzo Juarez. The logical extension of the State's contention is that "on, about, during or between October 1, 2014 and March 31, 2015" means between January 1, 2012 and March 31, 2015, if not some broader period of time within the statute of limitations.

The State gives the accused notice that the charge is not confined to a single date when the charging document alleges the offense occurred "on or about" a specific time frame. *State v. Statler*, 160 Wn. App. 622, 640-41, 248 P.3d 165 (2011). In *State v. Statler*, this court noted the rule that an information charging a crime occurred "on or about" April 15 covered a crime occurring on April 17. Of course, April 17 arrives only two days after April 15. Despite noting this rule, the court rejected Paul Statler's appeal because he showed no prejudice, particularly when the trial court postponed the trial when the State amended to information to read "on or about April 17." Statler had not raised an alibi defense.

*State v. Brooks*, 195 Wn.2d 91 (2020) supports both contentions asserted by the State. —that it held the prerogative to amend the information even if Lorenzo Juarez shows no prejudice because of the flexible prepositions and also that Juarez shows no prejudice. While the date of an offense is not an essential element of the crime and the flexible preposition put Juarez on notice of an uncertain date of the offense, the law is

uncertain as to whether a claim of prejudice by the defense can defeat a late-filed motion to amend the information. Regardless, Juarez does not demonstrate prejudice.

We now address *State v. Brooks'* handling of the first contention. The State sought to amend the information after both parties had rested their cases. The original information charged Kenneth Brooks with child molestation and rape based on two distinct dates. The State alleged the timing of the molestation was "on or about or between" January 1, 2014 and January 31, 2014. Brooks admitted to touching the victim's breasts, but testified that he could not recall being at the victim's home in January 2014. He added that he visited the home in May 2014. Brooks denied any rape regardless of the date alleged. The trial court allowed an amendment to allege the rape occurred between January 1 and May 31.

The state Supreme Court, in *State v. Brooks*, held that the trial court's permission to extend the date range did not constitute an abuse of discretion. The Supreme Court wrote that the use of "on or about or between" for the charging dates in the original information gave Kenneth Brooks notice of the flexibility of the timing of the incidents. The court hinted, but did not expressly rule, that the flexible language alone prevented Brooks from establishing prejudice.

A concurring justice, in *State v. Brooks*, objected to any ruling from the majority that use of "on or about of between" date range in the information precludes any

14

successful objection from the accused to an amendment of dates to a motion to amend before the verdict. The concurring opinion noted that the majority of jurisdictions require the State to prove the defendant's conduct occurred on a date "reasonably near" the date range in the charging document. *State v. Brooks*, 195 Wn.2d 91, 105 (2020) (Gordon McCloud, concurring). The concurring author concluded that the date proved at trial lay reasonably close to the date range in the original information.

Because the Supreme Court, in *State v. Brooks*, did not expressly hold that Kenneth Brooks need not show prejudice, we do not affirm the trial court's grant of the State's motion to amend Lorenzo Juarez's information because of the inclusion of the flexible prepositions. We also note that the amendment in Kenneth Brooks' information only changed the charging date two days. The amendment information arrayed against Juarez extending the charging period by two years and nine months.

We turn to the State's alternative contention that Lorenzo Juarez failed to show prejudice from the amended information. The trial court should permit an amendment absent an alibi defense or a showing of other prejudice to the defendant. *State v. Brooks*, 195 Wn.2d 91, 98-99 (2020). The accused bears the burden of demonstrating prejudice. *State v. Statler*, 160 Wn. App. 622, 640 (2011). No prejudice exists if time remains to prepare a defense. *State v. Statler*, 160 Wn. App. 622, 641 (2011). A defendant who claims prejudice by a late amendment may seek a trial continuance to secure time to

15

prepare a defense. *State v. Brooks*, 195 Wn.2d 91, 99 (2020).

Lorenzo Juarez alternatively contends that the law presumes prejudice and that he shows actual prejudice. In so arguing, Juarez astutely relies on *State v. Pelkey*, 109 Wn.2d 484 (1987). One sentence, in *State v. Pelkey*, when read literally, supports Juarez's assignment of error. The sentence reads:

> A criminal charge may not be amended after the State rested its case-in-chief unless the amendment is to a lesser degree of the same charge or a lesser included offense.

109 Wn.2d at 491. The State amended its information after it rested its case against Lorenzo Juarez. The amendment did not seek to substitute charges to a lesser degree of the same crime or lesser included offense.

In *State v. Pelkey*, 109 Wn.2d 484 (1987), the State charged Chae San Pelkey with one count of bribery resulting from offering to pay a law enforcement officer money in exchange for advance warning of any undercover surveillance of her sauna parlors. At trial, the State forgot to introduce evidence that the importuned law enforcement officer acted in his official capacity at the time Pelkey offered the money, an element of bribery. When Pelkey moved to dismiss the charges after the State rested, the State asked to amend its information to charge the crime of trading in special influence, a crime that lacks the required element of the payment offeree functioning in an official capacity. The jury convicted Pelkey of the amended charge. The Supreme Court reversed.

16

The court applied a bright-line rule that an amendment during trial charging a different crime violates article I, Section 22. The only two exceptions to this inflexible rule are amending to charge a lesser included crime or amending to charge an inferior degree of the original charge.

A concurring opinion in *State v. Pelkey*, which opinion garnered two other justices, disagreed with the majority's blanket rule prohibiting an amendment, after the State rests, other than to charge an inferior degree of crime or a lesser included offense. The concurring author, however, agreed with the dismissal of the amended charge because Chae San Pelkey showed prejudice. Pelkey's counsel outlined for the court ways in which the late amendment impaired his trial preparation. Counsel briefed the crime of bribery, but not trading in special influence. He geared his examination of key witnesses based on the necessary elements of bribery, not trading in influence. His preplanned closing focused on the crime of bribery.

The Washington Supreme Court dispelled Lorenzo Juarez's contention in *State v. Brooks*, 195 Wn.2d 91, 98, (2020). The court's majority wrote:

> *Pelkey* addressed the State's amendment of the information to a new offense, that is, a different crime with different elements (from bribery to trading in special influence). (*Pelkey* held "no prejudice need be shown when the amendment is to a *different charge* and the amendment is made after the State has rested." (emphasis added)). That is not the case here: before and after the amendment, the crime charged (third degree child molestation) and its essential elements remained the same; only the date was expanded. Accordingly, the Court of Appeals here correctly rejected

17

Brooks' contention that the date amendment at issue was reversible error under *Pelkey.*

*State v. Brooks*, 195 Wn.2d 91, 98, (2020) (internal citations omitted).

We write further about *State v. Brooks*, 195 Wn.2d 91 (2020). In addition to observing the flexible prepositions used in the original information against Kenneth Brooks, the Supreme Court added the Brooks showed no actual prejudice. A concurring justice, in *State v. Brooks*, objected to any ruling from the majority that use of "on or about of between" date range in the information precludes any successful objection from the accused to an amendment of dates to a motion to amend before the verdict. The concurring opinion noted that the majority of jurisdictions require the State to prove the defendant's conduct occurred on a date "reasonably near" the date range in the charging document. *State v. Brooks*, 195 Wn.2d 91, 105 (2020) (Gordon McCloud, concurring).

Lorenzo Juarez argues that extending the charging period by over two years prejudiced his defense. Until it rested its case, the State maintained that the offenses occurred between October 1, 2014, and March 31, 2015. Afterward, the State asserted that the incidents happened between January 1, 2012 and March 31, 2015.

We recognize the sizeable quantity of the State's extension of the charging period window. We do not consider the amendment "reasonably near" the initial charging dates, but Justice Gordon McCloud's *Brooks* opinion has yet to garner a majority on the

Supreme Court. Based on the current status of law, Lorenzo Juarez must show prejudice. Based on the current record, Juarez did not establish prejudice before the trial court, such that the court did not abuse its discretion in granting the amendment.

Juarez asserts that, due to this late notice, his defense counsel never sought Juarez's employment records to show employment during the extended charging period or from January 1, 2012 to October 1, 2014. As Juarez's argument continues, if the employment records showed employment between those two dates, the records would have provided an alibi because he never babysat during the months that he worked. But to his credit of courtroom honesty, defense counsel conceded on questioning from the trial court, that he could not represent that any employment records existed. Juarez failed in his burden. Lorenzo Juarez does not contend that counsel directed a pretrial motion, voir dire questioning, or opening argument to the timing of the charges. Juarez does not expressly argue that questioning of witnesses would have changed if his counsel knew of the expanding charging period. To the contrary, defense counsel effectively cross-examined M.H. about the confusion in dates. Juarez also never requested a trial continuance to allay any prejudice.

Lorenzo Juarez suggests that the State should have known, from the interviews with M.H. that the alleged assaults occurred earlier such that the State could have included the extended charging dates in the initial information. He cites no case law

to support this contention. The argument also harms Juarez because, by reading

Detective Mario Velez's affidavit of probable cause, Juarez also should have known of

a potential extension of the charging dates.

## Prosecutorial Misconduct

Lorenzo Juarez argues that the State committed prosecutorial misconduct by

eliciting testimony from Detective Mario Vela that improperly vouched for the veracity

of M.H.'s allegations against Juarez. Generally, misconduct warrants reversal only if the

prosecutor's actions are both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667,

675, 257 P.3d 551 (2011). The accused establishes prejudice with a substantial

likelihood that misconduct affected the jury's verdict. *State v. Monday*, 171 Wn.2d 667,

676 (2011). Nevertheless, when a defendant fails to object to such testimony, he must

show the prosecutor's misconduct was flagrant and ill-intentioned. *State v. Fleming*, 83

Wn. App. 209, 214, 921 P.2d 1076 (1996).

Lorenzo Juarez asserts that Detective Mario Vela's testimony that forensic

interviews can "weed out fabrications or manipulation" implied that he believed M.H.

truthful, as he did not observe any signs of deception during her interview. Detective

Vela did not explicitly testify that he believed M.H. Rather, he stated that he noted no

indications of fabrication or manipulation. When a witness does not expressly declare a

belief in the victim's account, the testimony does not constitute manifest constitutional

20

error. *State v. Warren*, 134 Wn. App. 44, 55, 138 P.3d 1081 (2006).

Ineffective Assistance of Counsel

Lorenzo Juarez contends that his lawyer's failure to object to the prosecutor's questioning of Detective Mario Vela on redirect examination violated his constitutional right to effective assistance of counsel. The United States and state constitution's guarantee a criminal defendant effective assistance of counsel. *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). To prevail on a claim of ineffective assistance, a defendant must establish that (1) counsel's performance fell below an objective standard of reasonableness under the circumstances, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

We have already ruled that the prosecution committed no misconduct when questioning Detective Mario Velez. Thus, the trial court likely would not have sustained any objection to the testimony of Velez. To use two negatives, counsel does not perform ineffectively when failing to raise an evidentiary objection the trial court would have denied.

21

Polygraph Examinations

Lorenzo Juarez challenges the community custody condition requiring him to "[s]ubmit to regular polygraph examinations about deviant sexual behavior upon the request of the supervising Community Corrections Officer." CP at 58. Under *State v. Combs*, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000), the scope of polygraph testing must be limited to monitoring compliance with other community custody conditions and cannot be used "as a fishing expedition to discover evidence of other crimes, past or present." The State agrees that the condition should be clarified to restrict polygraph examinations to verifying Juarez's compliance with his release conditions.

Predatory Finding

The State acknowledges that the judgment and sentence erroneously reads that Lorenzo Juarez committed a predatory crime under RCW 9.94A.836. We remand to the superior court for correction of a scrivener's error in a judgment and sentence. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

Statement of Additional Grounds

Lorenzo Juarez's additional grounds for review assert that (1) he was denied the right to present a defense at his omnibus hearing and (2) he is entitled to obtain his case file from the prosecutor's office to collaterally challenge his sentence. When so arguing, he refers to records outside of the record.

While a statement of additional grounds does not require references to the record or citations to authority, the court will not review an alleged error unless the statement clearly identifies the nature and occurrence of the error. RAP 10.10(c). Also, on a direct appeal, this court will not consider evidence outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Juarez may address these issues through a petition for personal restraint.

## CONCLUSION

We affirm Lorenzo Juarez's conviction. We remand to the superior court with instructions to limit the scope of the polygraph conditions and to strike the reference to a predatory crime.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Cooney, J.                                Staab, A.C.J.

No. 39808-1-III

FEARING, J. (Concurring)—In addition to penning the court's opinion, I write separately because the other judges disagree with one important point. I recognize some unfairness in requiring Lorenzo Juarez, in the middle or end of the trial, to establish that employment records would have confirmed employment from January 1, 2012 to October 1, 2014. Juarez had not expected the need to produce the records and any procurement of the records might require a subpoena and take weeks. Juarez should not be penalized when his counsel reasonably engaged in no investigation attended to the new time window. For this reason, Juarez should be able to seek relief through a personal restraint petition because of a late amendment if he produces new evidence in the form of records that show he worked during the new charging period.

_Fearing, J._
Fearing, J.